[No. B023919. Second Dist. Div. Six. Sept. 3, 1987.]

SANTA BARBARA COUNTY TAXPAYERS ASSOCIATION et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

COUNSEL

Ronald A. Zumbrun, Anthony T. Caso and Jonathan M. Coupal for Plaintiffs and Appellants.

Kenneth L. Nelson, County Counsel, and Don H. Vickers, Deputy County Counsel, for Defendants and Respondents.

Schwartz, Steinsapir, Dohrmann & Sommers, Michael R. Feinberg and Terri A. Tucker as Amici Curiae on behalf of Defendants and Respondents.

OPINION

GILBERT, J.—Article XIII B of the California Constitution, also known as Proposition 4, limits the amount of tax revenues a government entity may spend. Section 5 states, in pertinent part: "Each entity of government may establish . . . retirement . . . funds . . . . Contributions to any such fund . . . shall . . . constitute appropriations subject to limitation . . ."[1]

Here we conclude that the section means what it says, and that a county may not exclude from its annual appropriations contributions to its employees' retirement fund.

FACTS

Beginning in 1985, the County of Santa Barbara had recalculated its 1978-1979 base year appropriations limit forward to reflect the exclusion of the county's contributions to the retirement fund.[2] The Santa Barbara County Taxpayers Association (TPA) et al. filed suit for injunctive and declaratory relief and mandate, challenging the county board of supervisors' (county) exclusion of those contributions from its appropriations to the 1986-1987 fiscal year budget.[3] The trial court held that section 5 applies

---

[1] Section 5 in its entirety reads: "Each entity of government may establish such contingency, emergency, unemployment, reserve, retirement, sinking fund, trust, or similar funds as it shall deem reasonable and proper. Contributions to any such fund, to the extent that such contributions are derived from the proceeds of taxes, shall for purposes of this Article constitute appropriations subject to limitation in the year of contribution. Neither withdrawals from any such fund, nor expenditures of (or authorizations to expend) such withdrawals, nor transfers between or among such funds, shall for purposes of this Article constitute appropriations subject to limitation."

[2] See Government Code section 7902 on calculating appropriations limits.

[3] Other named defendants were the County of Santa Barbara and Kristi Johnson, in her official capacity as auditor-controller for the County of Santa Barbara.

only to retirement systems created after January 1, 1979, and that contributions to the retirement system constitute excludable debt service pursuant to *Carman* v. *Alvord* (1982) 31 Cal.3d 318 [182 Cal.Rptr. 506, 644 P.2d 192]. The court entered judgment against TPA after sustaining the county's demurrer without leave to amend.

TPA asserts that the plain language of section 5 requires the inclusion of such contributions as appropriations subject to the appropriations limit. We agree and reverse the judgment.

## DISCUSSION

The county primarily relies on the holding in *Carman, supra,* that a special voter-approved tax levied to provide contributions to the Public Employees Retirement System (PERS) does not violate the 1 percent limitation on property taxes of article XIII A since those contributions service debt under that article. The county urges that since the definition of debt service in article XIII A is nearly identical to that in article XIII B,[4] and the purposes of the two articles are nearly the same, contributions to the county retirement system are not appropriations subject to limitation under section 5 of article XIII B. We do not find this reasoning persuasive.

The Supreme Court limited its holding in *Carman* to its facts and to article XIII A. (*Carman* v. *Alvord, supra,* 31 Cal.3d at p. 333; see also p. 326.) Unlike article XIII A, article XIII B plainly and specifically states that contributions to a governmental retirement fund, derived from the proceeds of taxes, "shall *for purposes of this Article* constitute appropriations subject to limitation . . . ." (Art. XIII B, § 5, italics added.) No such directive appears in article XIII A.

It is true that contributions to a governmental pension plan may fall under the general definition of debt service under both articles XIII A and XIII B (see art. XIII B, § 8, subd. (g); *Carman* v. *Alvord, supra,* 31 Cal.3d at pp. 325, 327-328, esp. fn. 8), and " '[a]ppropriations subject to limitation' . . . shall not include: [¶] (a) Debt service . . . ." (see art. XIII B, § 9, subd. (a)). But this does not override the specific language of section 5 which states unconditionally that retirement contributions derived from proceeds

---

[4] Article XIII A, section 1 *excludes* from the 1 percent limitation on ad valorem taxes on real property *ad valorem taxes and special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to July 1, 1978,* and on any bonded indebtedness for property improvement or acquisition approved thereafter by two-thirds of those voting on such debt. Article XIII B, section 9 *excludes debt service, defined in section 8, subdivision (g) as appropriations required to pay the cost of interest and redemption charges on indebtedness existing or legally authorized as of January 1, 1979,* or on bonded indebtedness approved by a majority of the electorate concerned, *from appropriations subject to limitation.*

of taxes constitute appropriations subject to limitation under article XIII B. Such specific constitutional provisions prevail over the general exclusion for debt service of section 9. (*Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505].)

We must interpret the provisions of article XIII B as a whole to effectuate its purposes of limiting the growth of appropriations and the expenditure of taxes. (*Marrujo* v. *Hunt* (1977) 71 Cal.App.3d 972, 977 [138 Cal.Rptr. 220]; *County of Placer* v. *Corin* (1980) 113 Cal.App.3d 443, 446 [170 Cal.Rptr. 232]; *County of Los Angeles* v. *State of California* (1987) 43 Cal.3d 46, 61 [233 Cal.Rptr. 38, 729 P.2d 202].) The more reasonable interpretation of article XIII B that comports with these purposes is that the county's contributions to the employees' retirement system must be counted as appropriations subject to the limitation provisions of article XIII B. This interpretation prevails even though these contributions might also be considered debt service.

### *Vested Contractual Rights to Retirement Funds*

■ The county, of course, has a duty to pay pension funds as promised and earned. (*Carman* v. *Alvord, supra,* 31 Cal.3d at p. 325.) "By entering public service an employee obtains a vested contractual right to earn a pension on terms substantially equivalent to those then offered by the employer. [Citations.] On the employee's retirement after he has fulfilled pension conditions an immediate obligation arises to pay benefits earned. Earned benefits are deferred compensation (*Olson* [v. *Cory* (1980)] 27 Cal.3d [532] at p. 540 [178 Cal.Rptr. 568, 636 P.2d 532]) and, when payable, become a fixed indebtedness of the employer. [Fn. omitted.]" (*Ibid.*) "Pensions are a governmental obligation of great importance." (*Id.,* at p. 325, fn. 4.)

We are sympathetic to the county's desire to maintain the integrity of its pension plan and are mindful that to impair pension rights would violate the federal contracts clause. (U.S. Const., art. I, § 10, cl. 1; *Carman* v. *Alvord, supra,* 31 Cal.3d at pp. 328, 332-333.) The vested rights of secured creditors must be protected, as well. To prevent the impairment of these rights may require the county to redistribute expenditure allocations to meet these pension obligations.

Amicus, the California Teachers Association (CTA), argues that if we find that retirement funds are subject to the appropriations limit, government employees such as teachers will be left without income following retirement. We hope this ominous prognostication proves wrong. Nevertheless, we are constrained to follow the law rather than rule according to its

wisdom or folly. To the extent that CTA's calamitous prediction may be accurate, the electorate may vote for additional funding pursuant to article XIII B, section 4, or the Legislature may find a way to ameliorate the effects of this problem.

### *Limitation of Article XIII B to New or Changed Funds Only*

The county contends that article XIII B should apply, if at all, only to newly created or changed funds. It claims that the language of section 5 mandates this conclusion. The first sentence of section 5 reads, "[e]ach entity of government may establish such contingency, emergency, unemployment, reserve, retirement, sinking fund, trust, or similar funds as it shall deem reasonable and proper." The county argues that the limitations to appropriations were intended to apply prospectively only—to newly created or changed funds—to be consistent with the article's policy of excluding prior indebtedness from the appropriations limit (see §§ 8, subd. (g), 9, subd. (a)). CTA argues that the words "may establish" and "shall deem reasonable and proper" indicate prospective application. It also argues that this language mandates that contributions to any listed fund which was in existence prior to the effective date of the initiative are exempt as appropriations subject to limitation. We disagree.

Proper statutory construction does not proceed in a vacuum. (2A Sutherland, Statutory Construction (3d ed. 1943) §§ 46.05, p. 90; 46.07, p. 110.) One of the oldest and most fundamental canons of statutory construction is that once the purpose of the legislation has been ascertained, it must prevail over a strict, literal reading, unless the statute cannot be viewed any other way. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Gibbs* v. *City of Napa* (1976) 59 Cal.App.3d 148, 154-155 [130 Cal.Rptr. 382]; *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 603-604 [130 Cal.Rptr. 110].) One ferrets out the legislative purpose of a statute by considering its objective, the evils which it is designed to prevent, the character and context of the legislation in which the particular words appear, the public policy enunciated or vindicated, the social history which attends it, and the effect of the particular language on the entire statutory scheme. (58 Cal.Jur.3d, Statutes, § 23, pp. 341-342; 2A Sutherland, *supra,* at § 57.03, p. 644; *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].)

The county and CTA urge this court to adopt a literal, lexicographic interpretation of section 5 by dissecting the meaning of these particular words in the abstract. The first sentence of section 5 when viewed in the

context of article XIII B as a whole merely restates existing law and specifically identifies those funds to which contributions are subject to limitation. (*Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d at p. 260.)

CTA also urges us to follow the general rule that statutory and constitutional provisions have prospective application. If this rule were applicable here, only contributions to funds created or changed after 1978 would be subject to limitation. The vast majority of contributions to the funds listed in section 5 would remain outside the ambit of the initiative. As CTA acknowledges, this rule of prospective application applies only in the absence of a contrary intent. (*Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 686-687 [91 Cal.Rptr. 585, 478 P.2d 17]; *In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 587; 58 Cal.Jur.3d, *supra,* at p. 341.)

To apply section 5 prospectively would eviscerate the clear purpose of article XIII B—to limit expenditures from proceeds of taxes. We must avoid an interpretation which evades the purpose of the initiative. (*Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467-468 [289 P.2d 463]; *In re O'Neil* (1977) 74 Cal.App.3d 120, 123 [141 Cal.Rptr. 338].) An interpretation which is repugnant to the purpose of the initiative would permit the very "mischief" the initiative was designed to prevent. (2A Sutherland, *supra,* at §§ 46.01, p. 74; 46.02, p. 81; 46.05, pp. 91-92; 57.04, p. 650.) Such a view conflicts with the basic principle of statutory interpretation, *supra,* that provisions of statutes are to be interpreted to effectuate the purpose of the law.

The county conceives of a situation in which the inclusion of retirement contributions as appropriations subject to limitation would enable it to increase spending. This could occur because article XIII B preserves the same spending level as its base year, making subsequent yearly adjustments for population and inflation. If retirement contributions increase at a slower rate than cost of living and population adjustments, the county would have more money to spend. If this were a common occurrence, we doubt the county would be before us. The remote possibility that a government entity may be able to spend more money if contributions to its employment retirement fund are included in its budget does not undermine the purpose of article XIII B, to limit government spending.

*Relationship of Sections 5 and 9 of Article XIII B*

The county's other arguments to avoid the application of section 5 are without merit. The county maintains that section 5 does not conflict with section 9. It claims that section 5 merely defines *when* contributions

become subject to the appropriations limit, rather than defining *what* funds are subject to that limit. In making this statement, the county suggests, hypothetically, that contributions in the nature of section 9 debt service might be placed in some of the funds listed in section 5 without changing the character of those contributions.

Section 5 does more than tell us that contributions are subject to limitation in the year of contribution. It also tells us that all government contributions to the specifically listed funds, which are derived from the proceeds of taxes, are appropriations subject to limitation. To the extent such contributions might be considered to be within the ambit of section 9, a conflict would exist with section 5. The more specific language of section 5 controls. (*Rose* v. *State of California, supra,* 19 Cal.2d at pp. 723-724.)

The county contends that the rule that specific provisions prevail over general ones does not apply here since both sections 5 and 9 are special provisions. We find no merit to this unsupported proposition.

### Recipient Retirement Board as Distinct From County

The County Employees Retirement Law of 1937, under which Santa Barbara County operates, allowed for the establishment of retirement boards which are independent from counties. (*Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793, 798-799 [195 Cal.Rptr. 681, 670 P.2d 335]; and see Gov. Code, § 31450 et seq.) *Traub* held that a Workers' Compensation Appeals Board determination is not binding on a retirement board, for purposes of res judicata, because of the lack of privity between the county and the board, and because the control, custody and expenditure of the system's funds are the province of the board of retirement. ■ By analogy, the county argues that because the retirement board to which the contributions are made is totally distinct from the county, those contributions are not subject to limitation. The analogy is flawed. The case at hand concerns appropriations, not determinations regarding expenditures. It does not follow that because the retirement board is distinct and independent from the county, the county's appropriations to that system are not subject to limitation for purposes of article XIII B.

The statutorily mandated county contributions to the retirement system are specifically deemed appropriations subject to limitation under sections 5 and 8 of article XIII B. These contributions are obligations of the county which are part of the county budget adopted by the county board of supervisors. (Gov. Code, §§ 31586, 31581, 31453, 31454.)

The county's citation to *Bell Community Redevelopment Agency* v. *Woosley* (1985) 169 Cal.App.3d 24 [214 Cal.Rptr. 788], to suggest that contributions to the retirement fund have no appropriations limit and that section 5 is inapplicable to the distinct retirement board, is inapposite. The funding of a redevelopment agency is unlike retirement system funding under the 1937 County Employees' Retirement Law. Redevelopment agencies acquire their funding in various ways, which include outright grants, borrowed funds, and bonding indebtedness, according to the particular needs and resources existent for a given project. (*Id.,* at p. 27.) To the extent that contributions of available tax increments are distributed to a redevelopment agency to pay off bonded indebtedness of such projects, those contributions fall within the specific mandate of section 7 of article XIII B prohibiting the potential impairment of repayment of bonded indebtedness. (*Id.,* at p. 31.)

### *"Retirement" as Meaninq Retirement of Debt*

■ The county suggests that this court consider the possibility that the word "retirement" in section 5 was meant to refer to retirement of debt. There is no merit to this suggestion which urges a strained interpretation of a word whose meaning in context is plain and clear.

The judgment is reversed and the action is reinstated. Appellants are awarded costs on appeal.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied October 1, 1987, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied November 18, 1987. Panelli, J., was of the opinion that the petition should be granted.