935 F.2d 1071
 Bankr. L. Rep. P 74,021
In re EASTPORT ASSOCIATES, Debtor (Two Cases).
EASTPORT ASSOCIATES, Plaintiff-Appellee,
v.
CITY OF LOS ANGELES, Defendant-Appellant.
EASTPORT ASSOCIATES, Plaintiff-Appellant,
v.
CITY OF LOS ANGELES, Defendant-Appellee.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 5, 1990.
Decided June 14, 1991.
As Amended on Denial of
Rehearing July 31, 1991.
 
 Margaret M. Morrow, Quinn, Kully and Morrow, Los Angeles, Cal., for plaintiff-appellant/cross-appellee.
 James K. Hahn, City Atty., Claudia McGee Henry, Sr. Asst. City Atty., Anthony Saul Alperin, Asst. City Atty., and Jeri L. Burge, Deputy City Atty., Los Angeles, Cal., for defendant-appellee/cross-appellant.
 Nancy K. Chiu, Deputy Atty. Gen., Los Angeles, Cal. and John B. Murdock, Santa Monica, Cal., for amici.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, Chief Judge, and O'SCANNLAIN and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 Eastport Associates ("Eastport") filed for bankruptcy under Chapter 11 of the Bankruptcy Code. In the course of the bankruptcy proceeding, Eastport initiated an adversary proceeding against the City of Los Angeles ("the City") seeking declaratory relief on the issue of whether California law entitled it to an extension of time for final approval of a subdivision proposal. The bankruptcy court granted summary judgment to Eastport. The district court reversed and directed the bankruptcy court to dismiss Eastport's action. The district court, in a separate decision, also denied the City's motion to abstain. Eastport appeals and the City cross-appeals. We affirm both decisions of the district court.
 
 I. Factual Background
 
 2
 In 1978, the City approved a change of zone that would have allowed Eastport to construct a 500-unit subdivision on land Eastport owned in the Santa Monica Mountains on the condition that Eastport get the County of Los Angeles ("the County") to provide land for a secondary access road. Without the access road, the change of zone would have allowed a subdivision, but only of 300 units. In 1979, Eastport submitted a tentative tract map for a 500-unit subdivision, which was approved with the same condition.
 
 
 3
 Normally, the development entitlement would only last for three years. At that point, Eastport would have had to obtain final approval for its subdivision or the tentative tract map would expire and Eastport would lose its entitlement. However, in this case, adjacent homeowners brought an unsuccessful suit challenging the rezoning and subdivision approvals. Eastport's three year period was tolled until June 1981 when the action reached final judgment.
 
 
 4
 At that time Eastport tried to obtain the property necessary for its access road from the County. It made numerous offers, first for fair market value, and eventually for nine times fair market value. The County refused all of Eastport's offers. Eastport contends that a 300-unit subdivision would have been economically infeasible.[1]
 
 
 5
 Eastport's tentative map was scheduled to expire in June 1984, but the City granted several extensions. The last extension was to June 1987. By that time, Eastport was required either to get the land for the access road or post a bond. Eastport failed to meet the deadline and therefore lost its development entitlement.
 
 
 6
 Just before losing its entitlement, in March 1987, Eastport filed for Chapter 11 bankruptcy. In November 1987, Eastport filed an adversary proceeding in the bankruptcy court seeking declaratory relief. Eastport claimed that California Government Code Sec. 66452.6 extended the time for its development entitlement. Section 66452.6 provided for an extension of development entitlements for up to five years if a development moratorium existed. Eastport argued that the County's refusal to convey the property for the access road amounted to a development moratorium under the statute's definition.
 
 
 7
 Eastport moved for summary judgment and the City moved to dismiss and to abstain. The bankruptcy court denied Eastport's summary judgment motion and granted the City's motion to dismiss, but no final judgment was entered. The bankruptcy court also recommended denying the City's motion to abstain, and the district court entered an order denying the motion.
 
 
 8
 Eastport then lobbied the state legislature to amend Sec. 66452.6. In 1988, the legislature passed an amendment to the section. The amendment added to the definition of "development moratorium" any period of time during which a condition imposed by a city could not be satisfied because "[t]he condition necessitates acquisition of real property or any interest in real property from a public agency, other than the city or county that approved or conditionally approved the tentative map, and that other public agency fails or refuses to convey the property interest necessary to satisfy the condition." Cal.Gov't Code Sec. 66452.6(f)(2) (West Supp.1990). Eastport then moved for rehearing in the bankruptcy court in light of the amendment.
 
 
 9
 The bankruptcy court granted the motion for rehearing and granted Eastport's motion for summary judgment, finding that the amendment applied retroactively to extend Eastport's entitlements. However, it reiterated its earlier holding that the pre-amendment version of Sec. 66452.6 did not extend Eastport's time. The bankruptcy court also recommended denying the City's renewed motion to abstain, and the district court entered an order denying the motion. The City appealed that decision to this court.
 
 
 10
 The City also appealed the bankruptcy court's grant of summary judgment to the district court. Eastport cross-appealed on the issue of the pre-amendment version's applicability to Eastport. The district court reversed the bankruptcy court's grant of summary judgment and remanded with instructions to dismiss Eastport's claim. In re Eastport Associates, 114 B.R. 686 (C.D.Cal.1990). Eastport now appeals to this court. The City's appeal of the denial of its motion to abstain has been consolidated with Eastport's appeal and is now treated as a cross-appeal.II. Abstention
 
 A. Appealability
 
 11
 We first address the issue of whether the district court erred in denying the City's motion to abstain. As a threshold matter, we must decide whether denial of the City's motion is appealable. Because the district court entered the order denying the City's motion, our jurisdiction must rest on 28 U.S.C. Sec. 1291, which provides for appeals from final decisions of the district courts. Eastport argues that the decision not to abstain cannot be appealed because it is not a final decision.
 
 
 12
 Whatever prematurity existed in the City's original appeal of the decision not to abstain has been cured by the entry of a final judgment on the merits. Anderson v. Allstate Insurance Co., 630 F.2d 677 (9th Cir.1980), set out the rule in this circuit that once a final judgment is entered, an appeal from an order that otherwise would have been interlocutory is then appealable. "There is no danger of piecemeal appeal confronting us if we find jurisdiction here, for nothing else remains in the federal courts." Id. at 681.
 
 
 13
 The decision entered by the district court on April 16, 1990, reversing the bankruptcy court's decision is a final order. When a bankruptcy court enters a final order, a district court's order affirming or reversing that order is also final. In re Sambo's Restaurants, Inc., 754 F.2d 811, 814 (9th Cir.1985). As in Anderson, piecemeal review is no longer an issue because the merits of the case are now before us. The denial of the City's motion to abstain is therefore appealable.
 
 B. Denial of the motion to abstain
 
 14
 The district court denied the City's motion to abstain on the basis of the bankruptcy court's findings that:
 
 
 15
 (1) This adversary proceeding is a core proceeding.
 
 
 16
 (2) The State Law issues raised by the Rehearing Motion are not so difficult or complex that this Court ought to defer to the State Court to adjudicate the merits. Furthermore, the state statute at issue is not the subject of conflicting judicial decisions.
 
 
 17
 (3) Timely resolution of the issues raised is critical to the administration of the debtor's estate.
 
 
 18
 (4) The State Court cannot timely adjudicate this matter.
 
 
 19
 Congress has provided for permissive abstention in bankruptcy cases in 28 U.S.C. Sec. 1334(c)(1)[2]:
 
 
 20
 Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
 
 
 21
 The decision not to abstain under Sec. 1334(c)(1) is reviewed for an abuse of discretion. In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir.1990).
 
 
 22
 In Tucson Estates, we laid out the factors courts should consider in deciding whether to abstain under Sec. 1334(c)(1):
 
 
 23
 "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. Sec. 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties."
 
 
 24
 Id. at 1167 (quoting In re Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)). We then concluded that the bankruptcy court had abused its discretion in not abstaining because virtually every factor favored abstention. Id. at 1169.
 
 
 25
 In this case, neither the bankruptcy court nor the district court specifically considered the Tucson Estates factors because Tucson Estates had not been decided at the time of their decisions. Nevertheless, the arguments made before the bankruptcy court encompass most of the Tucson Estates factors. The City argued in its motion that the adversary proceeding was not a core proceeding, that state law was complex and involved the sensitive area of land use planning, and that only state law issues were involved. Eastport argued in its opposition that timely adjudication was necessary to its reorganization under Chapter 11 and that the state court could not timely adjudicate the dispute. In turn, the district court effectively engaged in the sort of balancing contemplated in Tucson Estates.[3] For these reasons, we need only decide whether it abused its discretion in striking the balance. We believe it did not.
 
 1. Factors weighing in favor of abstention
 
 26
 The City argues that the district court did not reach the proper conclusion because the adversary proceeding is a noncore proceeding, state law issues predominate over bankruptcy issues and no federal jurisdictional basis exists other than 28 U.S.C. Sec. 1334, and the state law issues are unsettled and complex. With respect to the City's first argument, we agree that the district court erroneously accepted the bankruptcy court's conclusion that the adversary proceeding was a "core" proceeding. Whether a proceeding is core or not is relevant to the sixth Tucson Estates factor, the degree of relatedness to the main bankruptcy case, and to the seventh factor, the substance of an asserted core proceeding. See Tucson Estates, 912 F.2d at 1168-69. It is also related to the twelfth factor, the presence of nondebtor parties.
 
 
 27
 28 U.S.C. Sec. 157(b) defines core proceedings as ones "arising under title 11, or arising in a case under title 11," and gives a nonexhaustive list of types of core proceedings. "Arising under" and "arising in" are terms of art. They are two of the three categories of cases over which district courts have jurisdiction under 28 U.S.C. Sec. 1334(b). The third category includes cases "related to" a case under title 11. As the Fifth Circuit has explained,
 
 
 28
 Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.... The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise only in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.
 
 
 29
 In re Wood, 825 F.2d 90, 96-97 (5th Cir.1987) (footnotes omitted). The court concluded: "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but ... it is an 'otherwise related' or non-core proceeding." Id. at 97.[4]
 
 
 30
 The Fifth Circuit's reasoning is persuasive. Congress amended these sections relating to bankruptcy jurisdiction in 1984 in response to the Supreme Court's decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In that case, the Court had held unconstitutional a bankruptcy court's jurisdiction to determine a state law contract dispute. The plurality opinion distinguished between the "core" of the federal bankruptcy power (restructuring debtor-creditor relations) and state-created private rights such as contract rights. Id. at 71-72, 102 S.Ct. at 2871-72. The amendments reflect this distinction. While the district courts have jurisdiction under 28 U.S.C. Sec. 1334 to decide state claims if they are related to a bankruptcy case, the bankruptcy courts may only decide claims if they are part of core proceedings. In noncore proceedings, the bankruptcy courts may only make recommendations to the district courts. 28 U.S.C. Sec. 157(c)(1).
 
 
 31
 Here, the adversary proceeding does not arise under or arise in a case under title 11 because it is not a cause of action created by title 11 or one that only arises in title 11 cases. The suit for declaratory judgment on Eastport's development entitlements could just as easily have been brought in state court, regardless of whether Eastport was in bankruptcy. Therefore, the adversary proceeding is not a core proceeding, though it is a related proceeding because it will affect the administration of the estate. The district court thus relied erroneously on the finding that it was a core proceeding, and the noncore status of the proceeding should have weighed in favor of abstention.[5]
 
 
 32
 The City's second argument is that the district court should have abstained because state law issues predominate over bankruptcy issues (the second Tucson Estates factor) and no federal jurisdictional basis exists other than 28 U.S.C. Sec. 1334 (the fifth Tucson Estates factor). Indeed, the adversary proceeding involves only state law issues because the sole question is whether California Government Code Sec. 66452.6 extended Eastport's development entitlement. Because the adversary proceeding involves no federal questions and no diversity of citizenship, the only federal jurisdictional basis is 28 U.S.C. Sec. 1334.
 
 
 33
 Furthermore, as the City emphasizes, the state law issues involve the sensitive area of land use planning. We have stated that land use is a sensitive area of social policy and that courts are justified in invoking Pullman[6] abstention to allow resolution of state land use issues. E.g., Santa Fe Land Improvement Co. v. City of Chula Vista, 596 F.2d 838, 839-41 (9th Cir.1979). On the other hand, declining to abstain when a case involves land use issues is not necessarily an abuse of discretion. See Shamrock Dev. Co. v. City of Concord, 656 F.2d 1380, 1384-85 (9th Cir.1981).
 
 
 34
 Tucson Estates did not decide whether or how to factor the sensitivity of the state law issues into the balance in bankruptcy cases. Because discretionary abstention under 28 U.S.C. Sec. 1334 is based on "respect for state law" just as Pullman abstention is, we believe that courts in bankruptcy cases should consider the significance of land use issues in deciding whether to abstain. While the presence of such issues is not dispositive, it should weigh heavily in the balance. Thus, the City has correctly pointed out that the predominance of particularly sensitive state law issues should weigh in favor of abstention.
 
 
 35
 Finally, the City argues that the district court erred in relying on the proposition that the state law was not difficult or complex (the third Tucson Estates factor). Specifically, the City points out that no court has yet decided whether the amendment to California Government Code Sec. 66452.6 applies retroactively to revive expired maps nor has any court yet decided whether the pre-amendment Sec. 66452.6 included refusals to convey property in the definition of development moratorium.
 
 
 36
 Simply because state courts have not decided an issue does not necessarily make the issue "unsettled." See Hillery v. Rushen, 720 F.2d 1132, 1137 (9th Cir.1983). "If a statute's language or legislative history ... makes it clear that a proposed interpretation is erroneous, federal courts should not hesitate to rule on the state-law issue." Id. Nevertheless, in this case whether the amendment to Sec. 66452.6 applies retroactively is not clear from the language of the amendment or from its legislative history. See Part III, infra.
 
 
 37
 Indeed the issue in this case is at least as difficult and unsettled as the issue in Tucson Estates. Tucson Estates involved the interpretation of an implied restrictive covenant under Arizona law. There, the Arizona Court of Appeals had published one opinion establishing the doctrine of implied restrictive covenants, but since then no other cases had been published on the issue. 912 F.2d at 1169 n. 6. Interpreting a statute and its amendment that are not clear on their face without the guidance of case law is similar in difficulty to applying restrictive covenant doctrine on the basis of only one case. Therefore, the state law involved in this case would have to be considered relatively difficult and unsettled. The City has thus accurately identified a number of factors weighing in favor of abstention.
 
 2. Factors weighing against abstention
 
 38
 Unlike in Tucson Estates, some factors here do weigh against abstention. The district court noted that timely resolution was critical to administration of the estate (relevant to the first and eighth Tucson Estates factors) and that the state court could not timely adjudicate the matter (relevant to the fourth factor).
 
 
 39
 The resolution of the entitlement issue will substantially affect the administration of the estate. The land in question is Eastport's sole asset. Whether it can be developed will determine the most sensible plan for Eastport's reorganization as well as the value of the property. In Tucson Estates, by contrast, the issues were how many homeowners benefited from a covenant requiring maintenance of a golf course for homeowners' exclusive use and the amount of damages in a misappropriation claim. The court emphasized that, although resolution of the issues would significantly affect the value of the estate, it would not affect the administration of the estate. 912 F.2d at 1169. Thus, this case is distinguishable from Tucson Estates because the state law issues here determine not only the value of the property but the entire nature of the business undergoing reorganization.
 
 
 40
 This case is also distinguishable from Tucson Estates in that no state court proceeding has ever been commenced. In Tucson Estates, the homeowners' lawsuit began in state court, and the debtor filed its petition for bankruptcy shortly after receiving an unfavorable summary judgment ruling and just days before the trial was to begin. The bankruptcy court stayed the trial of certain issues. Under those circumstances, the more efficient route would have been for the bankruptcy court to abstain because the state proceeding had already progressed almost to the point of final adjudication while the bankruptcy court would have had to start anew on the issues.
 
 
 41
 Here, the situation is reversed. The only litigation on Eastport's entitlement was in the bankruptcy court, so if the bankruptcy court abstained Eastport would have to start its litigation over again in the state courts. Thus, the fact that no state court proceeding has been commenced in this case is another factor weighing against abstention.
 
 
 42
 The decision whether to abstain involves balancing competing factors. The bankruptcy court's recommendation suggests that it did just that. It stated that the state law issues "are not so difficult or complex that this Court ought to defer to the State Court to adjudicate the merits." Even though the presence of land use issues should weigh heavily in the balance, we cannot conclude that the district court abused its discretion in finding that factors regarding the administration of the bankruptcy estate outweighed the interest in deferral to state courts. In addition, although the noncore status of the proceeding should have weighed in favor of abstention, we do not believe that this single factor tips the balance so sharply in favor of abstention that it would be an abuse of discretion to decline to abstain under the circumstances. While we might have balanced the factors differently ourselves, this case is not so one-sided that we can say the district court abused its discretion in balancing them the way it did.[7]
 
 
 43
 III. Applicability of California Government Code Sec. 66452.6
 
 
 44
 Having concluded that the district court did not abuse its discretion in declining to abstain, we turn to the merits of this case. Because the court of appeals is in as good a position as the district court to review the bankruptcy court's decision, we independently review that decision. Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. In re Anderson, 824 F.2d 754, 756 (9th Cir.1987); In re Commercial Western Finance Corp., 761 F.2d 1329, 1333 (9th Cir.1985). Grants of summary judgment are reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).
 
 
 45
 A. Retroactivity of the amendment to Sec. 66452.6
 
 
 46
 Eastport's first argument is that the 1988 amendment to California Government Code Sec. 66452.6 should apply retroactively to its expired tract map. Because the amendment includes refusal to convey property by a public agency in the definition of a development moratorium, if the amendment applies retroactively Eastport would get the benefit of an extended period of time to obtain final approval of its subdivision to account for the time the development moratorium was in effect.
 
 
 47
 In determining whether the amendment applies retroactively, we use California rules of statutory construction. In re Anderson, 824 F.2d 754, 756 (9th Cir.1987). The California Supreme Court has held that legislation is presumed to operate prospectively, not retroactively; thus, "in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." Evangelatos v. Superior Court, 44 Cal.3d 1188, 1209, 753 P.2d 585, 598, 246 Cal.Rptr. 629, 642 (1988). For example, in cases where the legislature extends statutes of limitations, the California courts presume that "periods of limitations once expired may not be revived except by express statutory language to that effect." Gallo v. Superior Court, 200 Cal.App.3d 1375, 1380, 246 Cal.Rptr. 587, 589 (1988); see also Douglas Aircraft Co. v. Cranston, 58 Cal.2d 462, 465-66, 374 P.2d 819, 821-22, 24 Cal.Rptr. 851, 853-54 (1962). Similarly here, the amendment to Sec. 66452.6 cannot apply retroactively to revive Eastport's expired tract map unless the legislature has made very clear its intent to give the amendment retroactive application. Cal.Gov't Code Sec. 66452.6(f)(2).
 
 
 48
 Eastport contends that the presumption against retroactivity should not apply because the amendment was just a clarification of existing law, not a change to it. When an amendment clarifies rather than changes existing law, it may be inferred that the amendment applies retroactively. City of Redlands v. Sorensen, 176 Cal.App.3d 202, 211, 221 Cal.Rptr. 728, 732 (1985).
 
 
 49
 The legislative history in this case does not support a conclusion that the amendment was merely clarifying existing law. While the Unfinished Business and Conference Completed analyses in the Senate Rules Committee note that the law was unclear on the issue of tolling time when an agency fails to convey property, they also note that the amendment "expands" and "redefines" the definition of development moratorium to include such periods of time. Further, the Legislative Counsel's Digest states: "This bill would expand the definition of development moratorium to include the refusal of a public agency, other than the city or county approving the subdivision, to convey a property interest necessary to satisfy a condition of the tentative map." Senate Bill 186, Stats.1988, ch. 1330; see also People v. Martinez, 194 Cal.App.3d 15, 22, 239 Cal.Rptr. 272, 276 (1987) (Legislative Counsel's Digest reliable source for determining legislative intent).
 
 
 50
 Because the amendment changes, rather than clarifies, existing law, the presumption against retroactivity applies. Section 66452.6 contains no express retroactivity provision, so any intent to apply it retroactively must be very clear. Eastport first argues that such intent is present because certain provisions of Sec. 66452.6 would not be given effect unless it were read to apply to already expired maps. In particular, Sec. 66452.6(b)(2) provides that "[t]he length of time specified in paragraph (1) [up to five years for a development moratorium] shall be extended for up to three years, but in no event beyond January 1, 1992, during the pendency of any lawsuit in which the subdivider asserts ... the existence or application of a development moratorium." If this provision were read to apply only to maps that had not already expired, the words "for up to three years" would have no effect. If a map expired any time after January 1, 1989 (the effective date of the amendment) the three year extension would extend it past January 1, 1992, at which time it would have expired regardless of the three year provision. Thus, to give the three year limit any effect, the amendment would have to apply to tract maps that had already expired before the effective date because otherwise the legislature could simply have worded the extension "until January 1, 1992."
 
 
 51
 Similarly, Sec. 66452.6(f)(2) as amended provides that a ' development moratorium specified in this paragraph a[condition necessitating acquisition of an interest in real property from a public agency]shall extend the tentative map up to the maximum period as set forth in subdivision (b), but not later than January 1, 1992." Subdivision (b), as explained above, provides for a maximum extension of five years. Eastport points out that if a map were in existence on January 1, 1989, it would be impossible for it to get the full extension of five years because the amendment's sunset date of January 2, 1992 is only three years later.
 
 
 52
 Generally, statutes should be construed to give their terms meaning and effect, avoiding "[i]nterpretive constructions which render some words surplusage." California Mfrs. Ass'n v. Public Utils. Comm'n, 24 Cal.3d 836, 844, 598 P.2d 836, 840, 157 Cal.Rptr. 676, 680 (1979). Eastport's argument thus has merit as a matter of general statutory interpretation, but the issue here is whether the fact that some words in the statute become surplusage without a retroactive application renders intent sufficiently clear to overcome the presumption against retroactivity. While the periods of extension may raise an inference that the legislature was contemplating already expired maps, the legislature might have just overlooked this problem when it accepted the terms. Therefore the apparent inconsistency in the statute's wording alone does not indicate a clear intent to have retroactive application.
 
 
 53
 Indeed, because the legislature is aware that statutes will ordinarily be interpreted to apply only prospectively, we would expect that the legislature would have corrected this apparent inconsistency if it so as to give those maps full benefit of the extensions. Further, we would expect that the legislature would have amended subsection (d), which provides that the expiration of a map terminates all proceedings,[8] and subsection (e), which requires that an application for extensions of time must be filed prior to the expiration of the map. In addition, if as Eastport contends, the amendments were meant to solve Eastport's particular situation,[9] we would expect that the legislature would have made clear that the Eastport specifically needed the benefit of both subsection (b) (2) and subsection (f) (2) to keep its map alive.
 
 
 54
 Eastport also argues that the intent to apply the amendment retroactively is evidenced by the amendment's legislative history. In California Government Code Sec. 66413.5(h), added by the same bill as Sec. 66452.6, the legislature specifically stated that "it is not the intent of the Legislature to influence or affect any litigation pending on December 31, 1988," but it included no such statement in the amendment to Sec. 66452.6. Such a difference in treatment generally raises the "necessary inference" that the omission indicates a difference in meaning. Calfarm Ins. Co. v. Deukmejian, 48 Cal.3d 805, 827, 771 P.2d 1247, 1260, 258 Cal.Rptr. 161, 174 (1989). Thus, Eastport argues, Sec. 66452.6 must have been intended to affect pending litigation such as Eastport's. We disagree. Even if the legislature did intend to affect pending litigation, it is still not clear that it intended to revive expired tract maps because litigation might be pending that would affect tract maps that had not yet expired.
 
 
 55
 We find more probative the fact that the legislature left in subsection (d) of Sec. 66452.6 in the course of amending the section. Subsection (d) provides: "The expiration of the approved or conditionally approved tentative map shall terminate all proceedings and no final map or parcel map of all or any portion of the real property included within the tentative map shall be filed with the legislative body without first processing a new tentative map." If the legislature had intended to revive expired tract maps, this subsection would have been the logical place to make that intent clear. Because it did not, we infer that it did not intend to revive expired maps.
 
 
 56
 Finally, Eastport contends that the amendment was enacted specifically to help Eastport in its current situation, so it must have been intended to apply retroactively. "One ferrets out the legislative purpose of a statute by considering its objective, the evils which it is designed to prevent, [and] the social history which attends it." Santa Barbara County Taxpayers Ass'n v. County of Santa Barbara, 194 Cal.App.3d 674, 680, 239 Cal.Rptr. 769, 772 (1987). Therefore, that the legislature was thinking of Eastport's case is significant in interpreting the amendment. Eastport lobbied for the bill, and its attorney drafted the amendment, so it is clear that the legislature was aware of Eastport's situation. See Staff Analysis, Assembly Committee on Local Government (Aug. 3, 1988); Analysis, Senate Third Reading (Aug. 10, 1988); Analysis, Conference Committee No. 1 (Aug. 10, 1988) (all noting that the amendment "arises from" Eastport's situation).
 
 
 57
 Still, the legislature did not necessarily intend to remedy Eastport's current situation by applying the amendment retroactively. Eastport's problems may have been the inspiration for the legislation, but the legislature might simply have wanted to avoid repetition of similar problems in the future. Eastport also urges that since its attorney drafted the legislation, his declaration regarding its effect is particularly significant. But the drafter's view is not necessarily the view of the legislature. Just because Eastport wanted the legislation to apply to it does not mean that the legislature wanted it to. See Carmona v. Division of Indus. Safety, 13 Cal.3d 303, 311 n. 8, 530 P.2d 161, 166 n. 8, 118 Cal.Rptr. 473, 478 n. 8 (1975) (courts do not even rely on statements of individual lawmakers, so they should similarly not rely on statements by outside individuals who were involved in drafting the legislation).
 
 
 58
 In fact, the legislative history indicates that the legislature was not committed to ensuring that the legislation would cover Eastport's expired tract map. The analysis at the Senate Third Reading states: "If the subject map expired in 1987, it is not clear that this bill will offer any relief for the Los Angeles situation." If the legislature had wanted to ensure that Eastport would benefit, it could have specifically stated that the amendment would revive expired tract maps. That it did not casts doubt on the intention of the legislature to apply the amendment to Eastport's expired map and does not support the contention that the legislature's intent to give its law retroactive application was "very clear."
 
 
 59
 We hold that the amendment to Sec. 66452.6 does not have retroactive application.[10] Because we have reached this conclusion simply by referring to principles of statutory construction, we need not reach the amici's additional arguments that construing the amendment to extend Eastport's entitlement would be unconstitutional and would not further effective land use planning.
 
 
 60
 B. Application of pre-amendment Sec. 66452.6
 
 
 61
 Eastport argues that even if the amendment were not retroactive, its subdivision map should be extended because it was subject to a development moratorium under the pre-amendment version of Sec. 66452.6. Its first claim is that Sec. 66452.6(f), providing that the definition of development moratorium includes "actions of public agencies which regulate land use, development, or the provision of services to the land, other than the public agency with the authority to approve or conditionally approve the tentative map, which thereafter prevents, prohibits, or delays the approval of a final or parcel map," applies to the County's refusal to convey property.
 
 
 62
 The County's action in itself did not prevent Eastport from filing a final map. When Eastport was unable to get the County to convey the property, it still could have submitted a map for 300 units. Eastport argues that the 300 unit development was not economically feasible, but in that case it was economics, not the County, that prevented Eastport from getting a final map approved.
 
 
 63
 Eastport's second contention is that Sec. 66452.6(f)(1), providing that a development moratorium exists when "[t]he condition was one which, by its nature, necessitated action by the city or county, and the city or county either did not take the necessary action or by its own action or inaction was prevented or delayed in taking the necessary action prior to expiration of the tentative map," applies here. Eastport argues that the only way, as a practical matter, to get the County to convey the property was for the City to initiate condemnation proceedings.
 
 
 64
 Getting land from the County was not a condition which by its nature necessitated action by the City. It might have been easier for the City to get the land from the County than it was for Eastport, but it was not necessary for the City to act in order for the County to convey the land. The County could have conveyed it to Eastport on its own. Eastport's argument that condemnation was practically the only way to satisfy the condition is not persuasive. The mere fact that the County was obstinate does not transform the condition into one requiring action by the City.
 
 IV. Conclusion
 
 65
 We conclude that Eastport was not entitled to an extension of its development entitlement either by applying the amended version of Sec. 66452.6 retroactively or by applying the pre-amendment version of Sec. 66452.6 and that the district court therefore properly reversed the bankruptcy court's grant of summary judgment to Eastport. Because we believe the district court did not abuse its discretion in declining to abstain, and because we believe it reached the proper conclusion on the merits, both decisions of the district court are
 
 
 66
 AFFIRMED.
 
 
 
 [1]
 Eastport states that a 300-unit subdivision would now be feasible
 
 
 [2]
 The City does not argue for application of section 1334(c)(2), which provides for mandatory abstention upon a timely motion by a party. We therefore do not decide whether section 1334(c)(2) applies to this case
 
 
 [3]
 The only factors not addressed, either directly or indirectly, by the parties' arguments in the district court are the ninth, tenth, and eleventh Tucson Estates factors: the burden of the bankruptcy court's docket, the possibility of forum shopping, and the existence of a right to a jury trial. None of these factors, however, is dispositive. Nothing in the record indicates that the bankruptcy court's docket was a factor either way. Similarly, the City does not argue, and nothing in the record indicates, that Eastport was forum shopping by bringing the adversary proceeding in bankruptcy court. Furthermore, there would be no right to a jury trial in state court because only issues of law are involved in the case, so that factor further supports the district court's decision not to abstain
 
 
 [4]
 Because Eastport's entitlement was pre-petition and the only post-petition event was its expiration, we do not need to decide whether this circuit should adopt the First and Second Circuits' more expansive view of core jurisdiction when a state law contract claim arises out of a contract entered into after the petition has been filed. See In re Ben Cooper, 896 F.2d 1394, 1400 (2d Cir.), vacated and remanded, --- U.S. ----, 111 S.Ct. 425, 112 L.Ed.2d 408, reinstated on remand, 924 F.2d 36 (2d Cir.1991); In re Arnold Print Works, Inc., 815 F.2d 165 (1st Cir.1987); but cf. In re Castlerock Properties, 781 F.2d 159, 162 (9th Cir.1986) (state law contract claims that do not specifically fall within categories of core proceedings are related proceedings); Wood, 825 F.2d at 97 (claim under state law arising from post-petition dispute is non-core)
 
 
 [5]
 The noncore status of the proceeding also indicates that the bankruptcy court should not have entered judgment on the merits of the case, but should have merely submitted findings of fact and conclusions of law to the district court. Only the district court had the authority to make the ultimate decision and enter the judgment. 28 U.S.C. Sec. 157(c)(1). However, this error is not an issue raised by this appeal because the reversal by the district court vacated the judgment of the bankruptcy court, so the error was effectively cured by the district court's decision
 
 
 [6]
 Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [7]
 The City also urges that the district court should have abstained under Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), or Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). These doctrines raise no further grounds for finding an abuse of discretion. Section 1334(c)(1) encompasses the bases for all the judicially created abstention doctrines: an interest in justice or comity or respect for state law. If the district court did not abuse its discretion in declining to abstain under the statute, it must not have abused its discretion in declining to abstain under the narrower Burford and Louisiana Power doctrines
 
 
 [8]
 See discussion infra pp. 1081
 
 
 [9]
 See discussion infra pp. 1081-820
 
 
 [10]
 Alternatively, Eastport argues for application of the so-called Bradley rule. In Bradley v. School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476, 488 (1974), the Supreme Court established the rule that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." California has adopted the Bradley rule. Woodland Hills Residents Ass'n v. City Council, 23 Cal.3d 917, 931-32, 593 P.2d 200, 206-07, 154 Cal.Rptr. 503, 509-10 (1979)
 The Bradley rule has no application in this case. We are applying the law in effect at the time of our decision by considering the effect of the amendment to Sec. 66452.6. The question is whether that law reaches back in time to revive Eastport's expired map.