**In re Althea Kehaulani AHEONG, Debtor.**

**Althea Kehaulani Aheong, Appellant,**

v.

**Mellon Mortgage Company, Appellee.**

**BAP No. HI–01–1315–MoRyB.**
**Bankruptcy No. 99–00320–LK.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 28, 2001.

Filed March 29, 2002.

Gary Victor Dubin, Dubin Law Offices, Honolulu, HI, for Althea Kehaulani Aheong.

Russell Leu, Leu & Okuda, Honolulu, HI, for Mellon Mortgage Co.

Before MONTALI, RYAN and BRANDT, Bankruptcy Judges.

## *OPINION*

MONTALI, Bankruptcy Judge.

Debtor Althea Kehaulani Aheong ("Debtor") appeals from the bankruptcy court's orders reopening her previously-dismissed chapter 13 case (the "Reopening Order") and annulling the automatic stay of Section 362[1] (the "Order Annulling Stay") as to foreclosure proceedings of secured creditor Mellon Mortgage Company, a Colorado company ("Mellon").[2]

Debtor claims the bankruptcy court had no jurisdiction to enter the Order Annulling Stay without issuing the Reopening Order, and no jurisdiction to enter the Reopening Order without first setting aside the order dismissing her chapter 13 case (the "Dismissal Order"). We disagree, and rule that Debtor lacks standing to challenge the Reopening Order. Her appeal from that order will be DISMISSED.

Debtor argues in the alternative that Mellon did not show adequate cause for the bankruptcy court to annul the automatic stay, primarily because Mellon did not move for such relief until over two years after it learned of the chapter 13 case. We rule that the bankruptcy court did not abuse its discretion and that the Order Annulling Stay will be AFFIRMED.

## I. FACTS

Debtor and her late husband, Cecil Aheong, executed a promissory note, dated May 3, 1990, in the principal amount of $137,200 secured by a mortgage on Debtor's residence in Kahului, Maui, Hawaii (the "Residence"). Mellon filed a foreclosure complaint in state court on March 12, 1998, and moved for summary judgment and an interlocutory decree of foreclosure in accordance with Hawaii law (the "State Court Motion"). On January 26, 1999, the day before a scheduled hearing on the State Court Motion, Debtor filed her chapter 13 case pro se (Case No. 99–00320, the "Bankruptcy Case"). Debtor listed only one creditor, Mellon, in her creditor matrix. She filed no schedules, statements, or chapter 13 plan, nor did she notify the state court or Mellon that she had filed a bankruptcy petition, nor appear at the hearing on the State Court Motion. On January 27, 1999, the state court orally granted the State Court Motion.

On February 17, 1999, the bankruptcy court ordered Debtor to file her schedules, statements, and chapter 13 plan within 15 days or the Bankruptcy Case would be dismissed. On February 25, 1999, Debtor herself moved to dismiss her Bankruptcy Case, and on March 1, 1999, the Dismissal Order was entered pursuant to that request.

The Dismissal Order provided that the bankruptcy court would retain jurisdiction to receive and review the final account of the chapter 13 trustee, enter an order discharging the trustee and the trustee's surety, and make such orders as might be necessary and proper to close the case.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036. The references to schedules, statements and the creditor matrix are to the documents required to be filed by Rule 1007.

2. Mellon is now known as Chase Mortgage Company West but for convenience we will continue to refer to it as Mellon.

On June 25, 1999, the bankruptcy court entered an order entitled "Order Approving Final Report, Discharging Trustee and Closing Estate in Chapter 13 Case Dismissed Before Confirmation."

Mellon proceeded with its foreclosure action and on October 11, 1999, the state court entered a written order that, like its oral ruling during the Bankruptcy Case, granted the State Court Motion. Debtor filed two subsequent bankruptcy petitions, first under chapter 13 and then chapter 7. On January 17, 2001, Debtor received her chapter 7 discharge but the foreclosure proceeding continued and on April 12, 2001, a deputy sheriff served Debtor with a writ of possession of the Residence.

On April 17, 2001, Debtor moved in state court for an emergency stay of the writ of possession, asserting that the order granting the State Court Motion was void as having been obtained in violation of the automatic stay under Section 362 in the Bankruptcy Case. The state court granted a stay to allow the parties time to seek clarification from the bankruptcy court and on May 4, 2001, Mellon moved to reopen the Bankruptcy Case for the limited purpose of considering its motion to annul the automatic stay (the "Motion to Annul the Stay") and to reclose the Bankruptcy Case when that matter was concluded.

At a hearing on May 23, 2001, on Mellon's motions the bankruptcy court stated:

This is a motion to reopen the first of the Debtor's three bankruptcy cases, each of which was filed ... [on] the eve or within a few days of something about to happen in the state court.[3] It's at least alleged and I think not denied that the State court and the creditor [Mellon] were not advised of the filing of the petition.

[W]hen petitions are filed, the [d]ebtors are given by the clerk's office copies of our General Order No. 1[4] which advises them of their responsibilities to advise opposing parties in the State court of their responsibility to give notice and warns that failure to comply may constitute [cause for] nullification of the automatic stay. So granting the motion—these motions would constitute standing by our general order.

... These appear to be filings just for the cause of delay. If there are truth-in-lending claims [against Mellon], fine, let them be resolved in the State court if they are in fact unresolved.

On June 15, 2001, the bankruptcy court granted both motions and entered the Reopening Order and the Order Annulling Stay, with a ten-day stay of the latter. On June 25, 2001, Debtor filed a notice of appeal of both orders and filed with the

---

3. These facts are discussed further in Part IV.3. of this opinion below.

4. General Order No. 1 states, in part:
 IT IS HEREBY ORDERED THAT:
 1. If a debtor in a voluntary or involuntary bankruptcy case, filed in the District of Hawaii, is also a party to any matter pending in any Court of the State of Hawaii, notice of the filing of the bankruptcy case shall be given to the State Court at the earliest possible date. The notice shall be directed to the State Court Judge to whom the matter is assigned, the Clerk of the State Court in which the matter is pending,

and to all counsel of record and parties who are not represented by counsel.
 2. * * *
 3. Notice of the commencement of a voluntary case shall be given by counsel for the debtor or by the debtor, if the debtor is not represented by counsel....
 4. * * *
 5. Failure to give the notice required by paragraph one of this order may constitute cause for nullification of the automatic stay.
General Order No. 1 (dated Feb. 17, 1994). General Order No. 1 was revised on Aug. 1, 2001; the changes are not applicable here.

bankruptcy court a motion, later granted, to stay the foreclosure action pending Debtor's appeal.

## II. ISSUES

1. Whether Debtor has standing to challenge the Reopening Order.

2. Whether the bankruptcy court had jurisdiction to consider the Motion to Annul the Stay.

3. Whether the bankruptcy court erred in issuing the Order Annulling Stay.

## III. STANDARD OF REVIEW

 Standing is a legal issue reviewed de novo. *Loyd v. Paine Webber, Inc.,* 208 F.3d 755, 758 (9th Cir.2000). The bankruptcy court's jurisdiction is also a legal issue reviewed de novo. *Ferm v. U.S. (In re Crowe),* 243 B.R. 43, 47 (9th Cir. BAP 2000), *aff'd,* 246 F.3d 673, 2000 WL 1843841 (9th Cir.2000) (table). A bankruptcy court's decision whether to reopen a bankruptcy case is reviewed for abuse of discretion. *Elias v. U.S. Trustee (In re Elias),* 188 F.3d 1160, 1162 (9th Cir.1999). A bankruptcy court's decision whether to annul the automatic stay is reviewed for abuse of discretion. *Palm v. Klapperman (In re Cady),* 266 B.R. 172, 178 (9th Cir. BAP 2001); *Ung v. Boni (In re Boni),* 240 B.R. 381, 384 (9th Cir. BAP 1999).

## IV. DISCUSSION

### 1. *Standing*

 The parties have not raised Debtor's standing as an issue on this appeal, but we have an independent duty to consider standing. *Gen. Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.),* 185 B.R. 801, 804 (9th Cir. BAP 1995). Appellate standing in bankruptcy is determined under the "person aggrieved" test, under which "[o]nly one

who is directly and adversely affected pecuniarily has standing to appeal a bankruptcy court's order." *Menk v. LaPaglia (In re Menk),* 241 B.R. 896, 917 (9th Cir. BAP 1999); *Fondiller v. Robertson (In re Fondiller),* 707 F.2d 441, 442–43 (9th Cir. 1983). Reopening a case typically "presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee." *Menk,* 241 B.R. at 916–17. Debtor challenges none of those issues, so ordinarily she would lack standing to appeal the Reopening Order. *Id.* at 913–17.

Debtor argues, however, that (a) the bankruptcy court had no jurisdiction to issue the Order Annulling Stay until it properly reopened her case, and (b) the bankruptcy court had no jurisdiction to issue the Reopening Order because it did not set aside the Dismissal Order. If Debtor's theory is correct then she is aggrieved by the Reopening Order, and has standing to challenge it, because without it there would have been no Order Annulling Stay and she might have avoided Mellon's attempt to proceed with its foreclosure and eviction. *See generally Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (requirements for standing).

In the next part of this opinion, however, we determine that the bankruptcy court did not need to reopen the Bankruptcy Case to have jurisdiction to consider the Motion to Annul the Stay. Therefore, we will conclude that Debtor lacks standing to appeal from the Reopening Order, although she has standing to appeal from the Order Annulling Stay itself.

### 2. *Jurisdiction*

 The parties have raised some but not all of the jurisdictional issues we ad-

dress below. We have an independent duty, however, to consider jurisdictional issues. *WMX Tech., Inc. v. Miller,* 104 F.3d 1133, 1135 (9th Cir.1997).

Bankruptcy jurisdiction is governed primarily by 28 U.S.C. Section 1334 ("Section 1334")[5] and has been described as a "swamp." *Menk,* 241 B.R. at 902. Two poorly-charted areas of that swamp are the bankruptcy court's jurisdiction after dismissal of a case, and to what extent closing a case bears on jurisdiction.

■■■■ Dismissing and closing a bankruptcy case are two distinct events. Dismissal allows creditors and debtors to get on with their non-bankruptcy business and resolve their disputes in appropriate fora. Among other things, dismissal generally ends the automatic stay and revests property of the estate in the entity in which such property was vested immediately before the commencement of the case. 11 U.S.C. §§ 349(b)(3) and 362(c)(1) and (2)(B). "The basic purpose of [Section 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the

case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6294; S.Rep. No. 989, 95th Cong., 2d Sess. 48–49 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5835.[6]

■■■■ Closing a bankruptcy case is a separate matter. Typically, dismissal does not coincide with termination of all proceedings. For example, chapter 13 cases usually stay open after dismissal to deal with approval of the chapter 13 trustee's final report and discharge of the trustee and trustee's surety. Once all such administration is completed an order may issue closing the dismissed case. That is what happened in Debtor's case.

The Ninth Circuit Court of Appeals has held that bankruptcy courts retain jurisdiction after dismissal in some circumstances. For example, in one case the Ninth Circuit held that after dismissal of the underlying case the bankruptcy court retained jurisdiction to "interpret" its orders entered prior to dismissal and "to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with

---

5. Section 1334(a) and (b) of title 28 provide, in full:

§ 1334. *Bankruptcy cases and proceedings*
(a) Except as provided in subsection (b) of this section, the district courts [and the bankruptcy courts as a unit thereof under 28 U.S.C. § 157] shall have original and exclusive jurisdiction of all cases under title 11 [the Bankruptcy Code].
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
28 U.S.C. § 1334(a) and (b).

6. Section 349(b) provides, in full:
(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—
(A) any proceeding or custodianship superseded under section 543 of this title;
(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and
(C) any lien voided under section 506(d) of this title;
(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.
11 U.S.C. § 349(b).

the underlying action" but not to grant "new relief independent of its prior rulings." *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir.1989).[7]

 It is less clear to what extent closing and reopening bankruptcy cases have jurisdictional significance. We have noted that jurisdiction continues over many matters after a case has been not only dismissed but also closed. *See Menk*, 241 B.R. at 906–910. In fact, we have said that reopening a bankruptcy case in connection with a discharge-related adversary proceeding was "not of jurisdictional significance." *Id.* at 910. More broadly, we have stated that "reopening a closed case is not a jurisdictional prerequisite to subject-matter jurisdiction under [Section] 1334(b)." *Id.* at 911.

With this background, we address whether the bankruptcy court had jurisdiction to consider Mellon's Motion to Annul the Stay.

### a. *Ancillary Jurisdiction*

 As noted above, the Ninth Circuit has ruled that after dismissal the bankruptcy court has ancillary jurisdiction to "interpret" and "effectuate" its orders.

*Taylor*, 884 F.2d at 481; *see also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379–380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). By granting Mellon's Motion to Annul the Stay the bankruptcy court was acting to "interpret" and "effectuate" General Order No. 1, which directed Debtor to notify Mellon and the state court of her bankruptcy filing and provided that "[f]ailure to give [such] notice ... may constitute cause for nullification of the automatic stay." The bankruptcy court interpreted General Order No. 1 by deciding whether the facts presented by Mellon did in fact constitute cause to nullify the automatic stay and, having determined that such cause was shown, it enforced General Order No. 1 by granting the Motion to Annul the Stay.

The foregoing analysis is not undermined by the Ninth Circuit's prohibition on "new relief" after dismissal, because that prohibition only bars the bankruptcy court from granting "new relief *independent of its prior rulings.*" *Taylor*, 884 F.2d at 481 (emphasis added). For the reasons stated above, the Order Annulling Stay was not "independent" of General Order No. 1.[8]

---

7. *See also Spacek v. Thomen (In re Universal Farming Indus.)*, 873 F.2d 1334 (9th Cir.1989) (relative priority of two claims not so closely linked with debtor's bankruptcy that dismissal of chapter 11 case renders action moot); *Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)*, 699 F.2d 963 (9th Cir.1983) (appeal from order denying motion to reimpose automatic stay was mooted when bankruptcy case was dismissed); *Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir.1992) (bankruptcy court has the discretion to retain jurisdiction over adversary proceedings after dismissal of main case after considering "economy, convenience, fairness and comity").

8. Although the bankruptcy court relied on its General Order No. 1 we have discretion to

affirm on any basis supported by the record. *Fernandez v. GE Capital Mortgage Servs., Inc. (In re Fernandez)*, 227 B.R. 174, 177 (9th Cir. BAP 1998), *aff'd* 208 F.3d 220, 2000 WL 152769 (9th Cir.2000) (table). Therefore, as an alternative basis for holding that the bankruptcy court had ancillary jurisdiction we hold that by granting Mellon's Motion to Annul the Stay the bankruptcy court was acting to "interpret" and "effectuate" its Dismissal Order, and was not granting new relief "independent" of that order. The "basic purpose" of the Dismissal Order was "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6294; S.Rep. No. 989, 95th Cong., 2d Sess. 48–49 (1978), U.S.Code

This conclusion is consistent with the limited authority on what constitutes "new relief independent of [the bankruptcy court's] prior rulings." On the one hand, imposing a stay after a bankruptcy case was dismissed was held impermissible because it was independent of prior rulings. *Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 327 (9th Cir.1986) (interpreting *Income Prop. Builders*, 699 F.2d 963). On the other hand, seeking disallowance of a bankruptcy attorney's fees earned in a dismissed case, for alleged non-disclosure under Rule 2014, was held by the Ninth Circuit to be within the bankruptcy court's ancillary jurisdiction, notwithstanding the conclusion by a majority of the bankruptcy appellate panel (the "BAP") that the debtor sought extra-jurisdictional "new relief." *See Elias v. Lisowski Law Firm, Chtd. (In re Elias)*, 215 B.R. 600, 603–04, 615–17 (9th Cir. BAP 1997) ("*Elias I*") *and Elias v. U.S. Trustee (In re Elias)*, 188 F.3d at 1162 ("*Elias II*").

In *Elias I* the BAP majority acknowledged that the bankruptcy court has an interest in ensuring that bankruptcy attorneys conduct themselves properly, but commented that this interest could be vindicated through disciplinary proceedings:

... that interest does not extend so far as to grant the bankruptcy court jurisdiction to involve itself in a state-court dispute by launching an independent inquiry into an attorney's conduct during a now-dismissed bankruptcy case. Such an inquiry would not have any connection to the issues presented in the bankruptcy, would not affect[ ] the rights of any creditor, and would not serve any of the purposes underlying the bankruptcy code. In short, the bankruptcy court would be granting the Debtor *new relief* that would serve no purpose in advancing the dismissed case.

*Elias I*, 215 B.R. at 603–04 (emphasis added).

The Ninth Circuit rejected this conclusion without comment, simply stating that consideration of attorneys' fees after dismissal was ancillary (but affirming the bankruptcy court's refusal to hear the matter on the ground that this was within its discretion). *Elias II*, 188 F.3d at 1162 (majority opinion); *and id.* at 1163–66 (concurring and dissenting opinion). It appears from *Elias II* that seeking to deny fees for non-disclosure under Rule 2014 is not "new relief" because it is not independent of the order authorizing the attorney's employment pursuant to that rule.

Under the above cases, Mellon's Motion to Annul the Stay did not seek new relief "independent" of General Order No. 1. Rather, the bankruptcy court acted within its jurisdiction to "interpret" and "enforce" that order.[9]

Cong. & Admin.News 1978, 5787, 5835. Since the bankruptcy court could not have known of Mellon's (apparently inadvertent) violation of the automatic stay, its Dismissal Order did not "undo" that violation. Annulling the automatic stay cured this problem and "effectuated" or "interpreted" the Dismissal Order consistent with the court's true intent.

Put differently, when Debtor asked the bankruptcy court to dismiss her case she was, in effect, asking the bankruptcy court to "undo" her bankruptcy case. When Debtor later moved for an emergency stay in state court, arguing that Mellon's foreclosure was void for violation of the automatic stay in her dismissed case, she was in effect arguing that the bankruptcy case had not been completely "undone." In that context the bankruptcy court had ancillary jurisdiction to vindicate the intent of its Dismissal Order by fully "undoing" the Bankruptcy Case. *See generally Kokkonen*, 511 U.S. at 380, 114 S.Ct. 1673 (ancillary jurisdiction includes vindication of court's authority and effectuating its decrees).

9. We note that had Debtor complied with General Order No. 1 she would have saved much time and effort by the parties, the state

We recognize that *Taylor's* reference to "prior rulings" does not mention general orders. General orders could be characterized as more in the nature of local rules than prior "rulings." We believe the distinction does not matter for *Taylor's* jurisdictional purposes because, like any other order, a general order applies statutes and rules of general application to a debtor's individual case. A general order simply saves the bankruptcy court from the ministerial step of entering an order in each case.

For all of these reasons, the bankruptcy court had ancillary jurisdiction to enter the Order Annulling Stay. That jurisdiction was not dependent on reopening Debtor's case or vacating the Dismissal Order.

### b. *"Arising Under" Jurisdiction*

■ As an alternative basis for our ruling, we hold that the bankruptcy court had "arising under" jurisdiction pursuant to Section 1334(b). We address this issue for two reasons. First, our conclusion that there is ancillary jurisdiction under the *Taylor* line of cases starts us on an unexplored path through the jurisdictional "swamp." That path is not perfectly clear. As noted above, for example, *Taylor's* applicability to general orders is not free from doubt. We wish to remove any doubt about the bankruptcy court's jurisdiction.

Second, General Order No. 1 will not help in many situations. We are aware that other districts within the Ninth Circuit have no equivalent to General Order No. 1, though they might consider adopting such an order. Moreover, General Order No. 1 provides no basis for jurisdiction over the usual and necessary post-dismissal matters, such as approval of the chapter 13 trustee's report.[10] Therefore, as an

---

court, and the bankruptcy court. The state court hearing presumably would have been continued to allow Mellon to seek relief from the automatic stay or dismissal of the Bankruptcy Case, and there would have been no need for Mellon to bring its Motion to Annul the Stay. Certainly common courtesy and professionalism call for counsel for debtors to notify opposing counsel and affected courts (of which those counsel no doubt are themselves officers in most cases) of the imposition of the automatic stay as soon as possible. Pro se debtors should do the same regardless of their lack of connection with other courts. Failure to notify those courts and counsel immediately leads to wasted effort and expense of preparing for hearings or trials which are suddenly blocked by the automatic stay. This case illustrates the good sense of having a mandate such as General Order No. 1 and the wisdom of enforcing it after-the-fact when it has been ignored without justification.

10. Debtor suggests that bankruptcy courts have a ready method to reassert their jurisdiction after dismissal—namely, to vacate their dismissal orders. That solution is not so simple.

Unlike an order reopening a bankruptcy case, which "does not undo any of the statutory consequences of closing" (*Menk*, 241 B.R. at 913), setting aside an order dismissing a bankruptcy case would have potentially enormous, highly disruptive, and unintended consequences. Upon dismissal, "avoided transfers are reinstated, certain voided liens revive, ... all property of the estate revests in the entity in which such property was vested immediately before bankruptcy ..." and "the automatic stay against interests other than property of the estate terminates." *Menk*, 241 B.R. at 912. *See* 11 U.S.C. §§ 349 and 362(c)(2)(B). Would setting aside a dismissal order re-void the previously avoided then reinstated transfers and liens, revest property in the estate, and reimpose the automatic stay as if there had been no dismissal? Would creditors who took actions between the time the dismissal order issued and when it was set aside have to move to annul the automatic stay to validate those actions? What about third parties, such as bona fide purchasers for value during that time? How could these problems be avoided without setting aside the dismissal for some purposes but not others, creating another jurisdictional swamp?

These questions do not appear to have been addressed by the few reported cases that in-

alternative and more general basis for the bankruptcy court's post-dismissal jurisdiction, we rule that the Motion to Annul the Stay arose under Section 362(d)[11] and therefore commenced a civil proceeding "arising under" title 11 within the meaning of Section 1334(b).

We begin our analysis with the plain language of Section 1334. That statute divides jurisdiction into three broad categories of civil proceedings: those "arising under title 11 [i.e. under the Bankruptcy Code]"; those "arising in ... *cases* under title 11"; and those "related to *cases* under title 11." 28 U.S.C. § 1334(b) (emphasis added). As we discuss further below, it is significant that only the latter two categories refer to "cases."

■ The first category, "arising under" jurisdiction, has been interpreted using various tests. We conclude below that it includes proceedings based on a right or cause of action created by title 11. Examples include proceedings to declare a debt nondischargeable under Section 523, to enforce the nondiscrimination provisions of Section 525, or to recover a fraudulent transfer or obligation under Section 548. *Menk*, 241 B.R. at 904 and 908–09 & n. 3; 1 *Collier on Bankruptcy*, ¶¶ 3.01[4][b] and [c][i], pp. 3–17 to 3–20 (Lawrence P. King et al. eds. 15th ed. rev. 2001) ("*Collier*")

(quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6400–01); 1 W. Norton, Jr., 1 *Norton Bankr.L. & Prac.2d*, § 4:43, text accompanying n. 53 (2001) ("*Norton*").

■ The second category, "arising in ... a case under title 11," has been interpreted to mean "primarily those administrative proceedings that, while not based on any right created by title 11, nevertheless have no existence outside bankruptcy." *Menk*, 241 B.R. at 909 (citations omitted). *See also Eastport Assocs. v. City of L.A. (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir.1991) (same, but noting lack of clear definition); 1 *Norton* § 4:43, text accompanying n. 56 (same). *Cf.* 1 *Collier* ¶ 3.01[4][c][iv], p. 3–29 (matters that are not "related" proceedings and do not "arise under title 11" must perforce "arise in" the title 11 case).

■ The Ninth Circuit's test for the third and final category, "related to" jurisdiction, is "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir.1988). *See also* 1 *Collier* ¶ 3.01[4][c]; 1 *Norton* § 4:44.

___

volve vacation of dismissal orders. *Compare G.E. Capital Mortgage Servs., Inc. v. Thomas (In re Thomas)*, 194 B.R. 641, 644–51 (Bankr. D.Ariz.1995) (declining to follow cases vacating dismissal, and discussing conflicting authority) *with In re Application of County Collector for Delinquent Taxes*, 291 Ill.App.3d 588, 593–94, 683 N.E.2d 995, 998–99, 225 Ill.Dec. 492, 495–96 (1997) (declining to follow *Thomas*, and also discussing conflicting authority) *and France v. Lewis & Coulter, Inc. (In re Lewis & Coulter, Inc.)*, 159 B.R. 188, 191 & n. 4 (Bankr.W.D.Pa.1993) (vacating dismissal to allow administrative claim for vacation pay, without discussing other possible effects of vacating dismissal). We prefer

not to answer any of these difficult questions until we must.

**11.** Section 362(d) provides, in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

\* \* \* \* \* \*

11 U.S.C. § 362(d).

In considering these three categories we repeat our observation above and in *Menk* that the statute refers to a "case" for "arising in" and "related to" jurisdiction but not for "arising under" jurisdiction:

> The portion of the § 1334(b) statutory sentence addressing "arising under" jurisdiction does not refer to the existence of a presently-open bankruptcy case: "the district courts [and bankruptcy courts as units thereof under 28 U.S.C. § 157] shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11." 28 U.S.C. § 1334(b) (emphasis added).
>
> Since this straightforward language does not refer to the existence of a "case" under § 1334(a), the text of the statute does not appear to require that the bankruptcy case must be open in order to exercise § 1334(b) "arising under" jurisdiction.

*Menk,* 241 B.R. at 905.[12]

Similarly, we have held that after dismissal of a bankruptcy case the bankruptcy court retains jurisdiction over an action for damages for willful violation of the automatic stay. An action for such damages arises under Section 362(h) and therefore is a civil proceeding "arising under title 11" notwithstanding dismissal of the underlying case. *Davis v. C.G. Courington (In re Davis),* 177 B.R. 907, 912 (9th Cir. BAP 1995); *see also Fernandez,* 227 B.R. at 179 (following *Davis* ), *aff'd* 208 F.3d 220, 2000 WL 152769 (9th Cir.2000) (table).

■ As *Menk* and *Davis* illustrate, "arising under" jurisdiction does not depend on the present existence of an open case or a non-dismissed case. It depends solely on the existence of "civil proceedings arising under title 11."[13]

The legislative history supports this analysis. In discussing the broad range of "civil proceedings" it emphasizes that the bankruptcy court has jurisdiction not just "within a case" but also, for example, after a case is closed:

> ... anything that occurs within a case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bank-

---

**12.** The facts in *Menk* were somewhat different from Debtor's case, but not in any way that would make its reasoning less applicable. Debtor's Bankruptcy Case was dismissed, closed, and then reopened. The bankruptcy case in *Menk* was closed but not dismissed, and judgment creditors moved to reopen the case to challenge the dischargeability of the judgment debt. We ruled that the debtor in *Menk* lacked standing to challenge the bankruptcy court's order reopening the case because the bankruptcy court had ancillary jurisdiction over the dischargeability action whether or not the case was reopened. Thus, although dismissal was not at issue in *Menk,* that decision held that jurisdiction did not depend on the present existence of a bankruptcy "case." *Menk,* 241 B.R. 896.

**13.** Although the bankruptcy court reopened Debtor's case, we hold below that this was not necessary. The bankruptcy court implied, in its Memorandum Concerning Debtor's Motion for Stay Pending Appeal ("Stay Memorandum"), that it reopened Debtor's case as much for the convenience of having a case number under which to file the relevant papers as anything else:

> All that reopening does is to provide a case in which the related contested matter, for relief from stay, will be considered. While practices among bankruptcy courts may differ, this bankruptcy court does not assign separate docket numbers to contested matters. Such matters use the docket number of the underlying bankruptcy case.

*See also Menk,* 241 B.R. at 910 (noting that some bankruptcy clerk's offices may choose to reopen the case for "practical administrative reasons related to internal management" which are "benign from the standpoint of jurisdiction.").

ruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.

The use of the term "proceeding," though, is not intended to confine the bankruptcy case. Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, [under Section] 524(b), the existence of prohibited post-bankruptcy discrimination, [under Section] 525, the validity of securities issued under a reorganization plan, and so on. The bankruptcy courts will be able to hear these proceedings because they *arise under title 11.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6401, quoted in *Collier* ¶ 3.01[4][b], p. 3–19 (emphasis added).

Similarly, Senate Report No. 95–989 states, in some relevant parts:

This broad grant of jurisdiction [in Section 1334] will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the [sic] jurisdiction, to dispose of controversies that arise in bankruptcy cases *or under the bankruptcy code.*

\* \* \* \* \* \*

The phrase "arising under title 11" will enable the Bankruptcy Court to hear any matter under which a claim is made under a provision of title 11.

S.Rep. No. 989, 95th Cong., 2d Sess. 154 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5939–40.

Therefore, our interpretation is supported both by the plain language of Section 1334(b) and, if there were any ambiguity in that language, by the legislative history. The bankruptcy court had post-dismissal and post-closing jurisdiction over the Motion to Annul the Stay.[14]

We are aware that our reading of the plain language of the statute is somewhat different from the gloss we have previously put on it. We have previously stated that "arising under title 11" means a *"cause of action* created by title 11." *Menk,* 241 B.R. at 904 and 908–09 & n. 3 (emphasis added, citations omitted). The Ninth Circuit also has referred to "causes of action" created by title 11. *Eastport,* 935 F.2d at 1076. *See also Wood v. Wood (Matter of Wood),* 825 F.2d 90, 96–97 (5th Cir.1987).

None of these cases, however, held that a bankruptcy court lacked jurisdiction because of the difference between a "cause of action" and some other type of civil proceeding. Moreover, we have previously referred to "rights" as well as "causes of action" when distinguishing "arising in" from "arising under" jurisdiction. *See Menk,* 241 B.R. at 909 (the phrase "arising in a case under title 11" means "primarily those administrative proceedings that, while not based on any *right* created by title 11, nevertheless have no existence outside bankruptcy") (emphasis added).

---

**14.** We note that Rule 4001(a) provides that a "motion for relief from the automatic stay provided by the Code ... shall be made in accordance with Rule 9014," and Rule 9014 refers to "a contested matter *in a case* under the Code not otherwise governed by these rules ...." Fed. R. Bankr.P. 9014 (emphasis added). This does not mean, however, that a motion for relief under Section 362(d) can only be brought "in a case." The quoted portion of Rule 9014 simply emphasizes that when no other rules govern and a contested matter arises within a case then the procedures in Rule 9014 govern, but Rule 4001(a) makes Rule 9014's procedures applicable to motions for relief from the automatic stay regardless whether those motions arise within *a case or after it is* dismissed or closed. Nothing in Rule 9014 is to the contrary.

The Ninth Circuit has also used both phrases. *Eastport,* 935 F.2d at 1076. *See also Wood,* 825 F.2d at 96–97 (description of "arising under" jurisdiction as "matters invoking a substantive right created by federal bankruptcy law").

We believe that the cases using the term "cause of action" are grappling with various tests to determine when a civil proceeding "arises under" title 11, rather than narrowing the statutory term "civil proceeding." The discussion in *Collier* is illustrative of the courts' struggle. *Collier* analogizes to the tests for "arising under" jurisdiction outside of bankruptcy, and observes that one such test is whether the "*title or right* set up by one party, may be defeated by one construction of the ... laws of the United States, and sustained by the opposite construction ...." 1 *Collier* ¶ 3.01[4][c], p. 3–19, text at n. 45, *quoting* 15 *Moore's Federal Practice,* ch. 103 (Matthew Bender 3d ed.) (emphasis added). Another test is that "[a] suit arises under the law that creates the *cause of action.*" 1 *Collier* ¶ 3.01[4][c][i], p. 3–21, text accompanying n. 46 (emphasis added, quotation marks and citations omitted). Another commentator states that the "essence" of arising under jurisdiction is that "the claim asserted is grounded upon a particular provision of the Bankruptcy Code." 1 *Norton* § 4:43, text accompanying n. 53.

We conclude that Section 1344(b)'s phrase "all civil proceedings arising under title 11" is not limited to causes of action under title 11 but includes proceedings based on a "right" under title 11. Mellon's Motion to Annul the Stay sought to enforce just such a right, namely its right to relief upon a proper showing of "cause" under Section 362(d).[15]

We also find nothing inconsistent between the plain language of Section 1334 and the relatively few Ninth Circuit cases that have addressed bankruptcy courts' post-dismissal jurisdiction. As discussed above, those cases recognize that bankruptcy courts have post-dismissal jurisdiction to "interpret" orders entered prior to dismissal and "to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying action." *Taylor,* 884 F.2d at 481. *See also Universal Farming Indus.,* 873 F.2d at 1335–36; *Income Prop. Builders,* 699 F.2d 963. Some of those cases also state that the bankruptcy court lacks the power to grant "new relief independent of its prior orders" after dismissal. *Taylor,* 884 F.2d at 481. *See also Income Prop. Builders,* 699 F.2d at 963. We have previously distinguished *Taylor* and *Income Prop. Builders,* however, as involving only motions for "prospective relief regarding the automatic stay," not retroactive relief. *Davis,* 177 B.R. at 912 (retroactive relief was damages for alleged willful violation of automatic stay). *See also Fernandez,* 227 B.R. at 179 (following *Davis*), *aff'd* 208 F.3d 220, 2000 WL 152769 (9th Cir.2000) (table). Moreover, both cases are inapplicable for other reasons.

In *Taylor* two creditors sought relief from the automatic stay not only in the case then pending but also in future bankruptcy cases. To obtain this extraordinary relief the creditors filed an adversary proceeding. Both that adversary proceeding

---

**15.** We are not presented with, and do not decide, whether matters that do not involve "rights" or "causes of action" are included in the term "civil proceedings." For example, we have noted that under one test cited in *Collier* a "civil proceeding" includes a "title" created by law. 1 *Collier* ¶ 3.01[4][c], p. 3–19, text at n. 45. Without deciding what such a "title" might be, we note that Mellon's "civil proceeding" sought to enforce a right, namely the right to relief under Section 362(d) upon a proper showing of "cause."

and the underlying bankruptcy case were dismissed by one bankruptcy judge, but notwithstanding these dismissals a second bankruptcy judge later entered a default judgment granting the requested relief in future bankruptcy cases. The Ninth Circuit held that this judgment was beyond the jurisdiction of the second bankruptcy judge. *Taylor*, 884 F.2d 478.

Nothing in that holding is contrary to the analysis herein. The automatic stay in *Taylor's* dismissed bankruptcy case terminated by operation of law, so relief under Section 362(d) was no longer at issue. 11 U.S.C. §§ 349(b)(3) and 362(c)(1) and (2)(B). The only issue on appeal, therefore, was whether the bankruptcy court could prospectively lift the automatic stay in future bankruptcy cases. The basis for this extraordinary relief was a res judicata theory, in which the bankruptcy court purported to determine the future res judicata effect of its own judgment. *See Little v. Taylor (In re Taylor)*, 77 B.R. 237, 239–240 (9th Cir. BAP 1987) (quoting judgment). That theory appears to be independent of the Bankruptcy Code, not arising under it, so the bankruptcy court in *Taylor* would not have had the "arising under" jurisdiction discussed herein. Moreover, *Taylor* does not discuss or even refer to Section 1334. *See Taylor*, 884 F.2d 478. In other words, *Taylor* is both factually and legally inapposite.

In *Income Prop. Builders* when one creditor was granted relief from the automatic stay to foreclose on and sell a condominium project, a second creditor complained that it had received no notice of the proceedings. The bankruptcy court denied the second creditor's motion to reimpose the stay, and while the second creditor's appeal was pending the bankruptcy case was dismissed. The second creditor failed to oppose dismissal of the bankruptcy case or to obtain a stay of the sale pending its appeal. In that context the Ninth Circuit held that the appeal was moot because "[o]nce the bankruptcy case was dismissed, a bankruptcy court no longer had power to order the stay ...." *Income Prop. Builders*, 699 F.2d at 964. A later Ninth Circuit decision summarizes the case as holding that "relief in the nature of a *new* stay" could only be granted "while a bankruptcy case was pending." *Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 327 (9th Cir.1986) (emphasis added). In other words, as we have previously held, the relief was prospective, not retroactive. *Davis*, 177 B.R. at 912.

The *Income Prop. Builders* case also stated that the bankruptcy court had no power to "award damages allegedly attributable to [the stay's] vacation." *Income Prop. Builders*, 699 F.2d at 964. This appears to be dicta because there is no indication that the second creditor in that case sought damages—its motion was entitled "Motion to Reinstate Stay." *Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders)*, 8 B.R. 304, 305 (9th Cir. BAP 1980). Moreover, if the Ninth Circuit meant that under the circumstances the bankruptcy court had no authority to award damages for violation of the automatic stay we believe that conclusion was legislatively overruled the following year by enactment of Section 362(h), which provides for damages for willful violation of the automatic stay. 11 U.S.C. § 362(h) (enacted 1984). That section gives the bankruptcy court "arising under" jurisdiction even if none existed before. In addition, after *Income Prop. Builders* the Ninth Circuit has affirmed our holding that the bankruptcy court has post-dismissal jurisdiction to impose sanctions under Section 362(h). *Fernandez*, 227 B.R. at 179, *aff'd* 208 F.3d 220, 2000 WL 152769 (9th Cir.2000) (table). Finally, *Income Prop. Builders* does not mention

Section 1334. In other words, nothing in that case is contrary to the analysis herein.

Similarly, we have distinguished *Universal Farming* as an application of standard mootness doctrines, which do not bar jurisdiction where the courts can "fashion meaningful relief." *Indus. Comm'n of Ariz. v. Solot (In re Sierra Pacific Broadcasters)*, 185 B.R. 575, 576 n. 3 (9th Cir. BAP 1995). Mellon's Motion to Annul the Stay seeks meaningful retroactive relief and no argument has been made that it is moot.

Therefore the bankruptcy court's jurisdiction was not barred by the *Taylor, Universal Farming Indus.*, and *Income Prop. Builders* line of cases. None of those cases involved post-dismissal jurisdiction comparable to Debtor's situation. Indeed, given Congress' intent for dismissal "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case," and given that creditors sometimes do not even know there is a bankruptcy case until after dismissal, it is particularly appropriate that the bankruptcy court have jurisdiction to annul the automatic stay after dismissal. H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6294; S.Rep. No. 989, 95th Cong., 2d Sess. 48–49 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5835.[16]

In sum, we hold that Section 1334(b)'s reference to "all civil proceedings arising under title 11" includes all proceedings arising under Section 362(d) of title 11. This necessarily includes a proceeding to annul the stay after the underlying case has been dismissed, or closed, or both.

The concurrence and dissent of Judge Ryan rejects post-dismissal "arising under" jurisdiction. Respectfully, we disagree.

The dissent starts by noting that bankruptcy courts are courts of limited jurisdiction, particularly post-dismissal. We agree. We do not support any expansion of that jurisdiction beyond the limits that Congress established in Section 1334 and the Bankruptcy Code.

The dissent next argues that a motion for relief from the automatic stay is an "administrative" matter within the "arising in" category of bankruptcy jurisdiction, and that this somehow precludes it from being in the "arising under" category. Assuming for the moment that a motion under Section 362(d) is "administrative," the dissent offers no reason why "arising in" and "arising under" jurisdiction would be mutually exclusive. Courts frequently have multiple and overlapping grounds for asserting jurisdiction. *See In re Storm Technology, Inc.*, 260 B.R. 152, 155–56 (Bankr.N.D.Cal.2001) (asserting both "related to" jurisdiction and jurisdiction "arising under title 11 or arising in a case under title 11"). *See generally Vylene Enterprises, Inc. v. Naugles, Inc. (In re Vylene Enterprises, Inc.)*, 968 F.2d 887 (9th Cir.1992) (jurisdiction could arise under 28 U.S.C. § 158(d), § 1291, or both). *See also Eastport*, 935 F.2d at 1076 (noting lack of clear distinction between "arising under" and "arising in" clauses of Section

---

**16.** We have previously held, after a Chapter 13 case was dismissed, that whether the bankruptcy court should have lifted the automatic stay nunc pro tunc was a moot question "because there is no longer an attempt to pursue a Chapter 13 plan." *Omoto v. Ruggera (In re Omoto)*, 85 B.R. 98, 100 (9th Cir. BAP 1988). Debtor, however, was pursuing a Chapter 13 plan, and if she recovered her house she could continue to do so, or pursue refinancing or some other alternative. Therefore, *Omoto* is distinguishable. *Cf. Davis*, 177 B.R. at 911 (distinguishing *Omoto* because it did not involve a claim for damages for violation of the automatic stay).

1334(b)); *Wood*, 825 F.2d at 92 ("Legislative history indicates that the phrase 'arising under' title 11 or arising in or related to cases under title 11" was meant, not to "distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts.").

Moreover, we do not see how we can fulfil our duty to follow *Davis*, which held that there is post-dismissal "arising under" jurisdiction over a proceeding seeking damages under Section 362(h), without holding that there is likewise post-dismissal "arising under" jurisdiction to annul the stay under Section 362(d). *See Davis*, 177 B.R. at 912.

Rather than expanding jurisdiction, we are following and applying our own binding precedent in *Davis*, as we must. *Ball v. Payco–General American Credits, Inc. (In re Ball)*, 185 B.R. 595, 596–98 (9th Cir. BAP 1995) ("We will not overrule our prior rulings unless a Ninth Circuit Court of Appeals decision, Supreme Court decision or subsequent legislation has undermined those rulings.").

The dissent distinguishes *Davis* as relying on ancillary jurisdiction, but that decision never mentions ancillary jurisdiction and plainly relies on "arising under" jurisdiction:

> The bankruptcy court had subject-matter jurisdiction over all claims alleging willful violation of the automatic stay. Bankruptcy courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Appellant's action for willful violation of the automatic stay is created by section 362(h) of title 11 of the United States Code. Thus, the action *arises under* title 11 and is within the subject-matter jurisdiction of the bankruptcy court.

*Davis*, 177 B.R. at 912 (emphasis added). *Cf. id.* at 912–13 (discussing "supplemental jurisdiction over Appellant's *state law* claims") (emphasis added).

Moreover, if jurisdiction in *Davis* had been based on ancillary jurisdiction, then under the dissent's analysis, the bankruptcy court in *Davis* would have been precluded from granting new relief independent of a prior order. Where is the prior order in *Davis? See Davis*, 177 B.R. at 912 and passim.

Returning to the dissent's premise that a motion for relief from the automatic stay is "administrative," and hence part of "arising in" jurisdiction, we find little support for that notion. The dissent points out that *Collier* lists motions to annul the automatic stay as one of the proceedings "arising in" a bankruptcy case. We note that *Collier*'s reading of Section 1334 is attenuated: *Collier* starts with the Fifth Circuit's comment in *Wood* that the phrase "arising in" is "less clear [than 'arising under'], but seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases"; *Collier* concludes from this tentative definition in *Wood* that the "principal constituent" of "arising in" jurisdiction is "the phrase 'administrative matters,'" which *Collier* says is "discussed below" with a cross-reference to its discussion of a slightly different phrase, "matters of administration," which is one of four "convenient" categories *Collier* itself creates to discuss "core" proceedings under 28 U.S.C. § 157(b)(2); and *Collier* defines "matters of administration" to include not only what the statute refers to as "administration"—"(A) matters concerning the administration of the estate"— but also some of the other statutory categories, without explanation why these are "administrative" while other statutory categories are not—*e.g.*, *Collier* defines "(G) motions to terminate, annul, or modify the

automatic stay" and "(L) confirmations of plans" as administrative. *See* 1 *Collier* ¶¶ 3.01[4][c][iv] at nn. 89–93 and accompanying text, and ¶ 3.02[3], at pp. 3–28 and 3–36 to 3–38, *citing Wood*, 825 F.2d at 96–97 *and* 28 U.S.C. § 157(b)(2). Moreover, there is no indication in *Collier* that its authors considered a post-dismissal motion to annul the automatic stay, or any comparable situation.

Therefore, when it comes to motions to annul the stay post-dismissal the cited sections of *Collier* are neither persuasive authority against jurisdiction nor inconsistent with our opinion. We note, further, that 28 U.S.C. § 157(b) refers to core proceedings both "arising under" or "arising in" Title 11 (so noted in *Eastport*, 935 F.2d at 1076). What could be more "under" Title 11 than the automatic stay (11 U.S.C. § 362(a)) and the right to seek to annul it (11 U.S.C. § 362(d))?

Given the questionable "authority" of the *Collier* quotes and the binding effect of *Davis*, our course here is clear.

Third, reading Section 1334 to preclude post-dismissal jurisdiction would bar bankruptcy courts from doing what they regularly do post-dismissal, like approving chapter 13 trustees' reports. Would the bankruptcy courts have to set aside dismissal orders to approve such reports? Would setting aside dismissals cause the problems noted in footnote 10 above? How could those problems be avoided without setting aside the dismissal for some purposes but not others, which would create another jurisdictional swamp? We do not see the need or desirability of wading into these problems when the plain language of Section 1334 permits post-dismissal "arising under" jurisdiction without reference to whether there is a pending "case." Sticking with the plain language of the statute, it seems to us, is the best way to respect the bankruptcy courts' lim-

ited jurisdiction. *See Linkway*, 196 B.R. at 521 (jurisdiction must be "grounded in and limited by statute" not "judicial decree").

For all of the foregoing reasons, the bankruptcy court had jurisdiction over the Motion to Annul the Stay. Moreover, because the Reopening Order was without jurisdictional significance Debtor lacks standing to appeal from it.

### 3. *The Order Annulling Stay*

▮▮▮▮▮ The bankruptcy court's order granting the Motion to Annul the Stay is a final decision reviewable by this court. *Crocker Nat. Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.)*, 734 F.2d 426, 429 (9th Cir.1984). The Ninth Circuit Court of Appeals has cautioned that retroactive relief should be "applied only in extreme circumstances." *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir.1995) (*quoting Phoenix Bond & Indemnity Company v. Shamblin (In re Shamblin)*, 890 F.2d 123, 126 (9th Cir.1989)). The Ninth Circuit has also held, however, that the bankruptcy court has "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992). Cause to annul the stay may exist where "the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors." *In re Murray*, 193 B.R. 20, 22 (Bankr.E.D.Cal.1996) (quotation marks and citation omitted). Ultimately, the decision is left to the sound discretion of the bankruptcy court. *Kissinger*, 72 F.3d at 109 (affirming order annulling stay).

The bankruptcy court articulated several reasons for annulling the automatic stay. It noted that Debtor filed three successive voluntary petitions, each on "the eve or

within a few days of something about to happen in state court," that "[t]hese appear to be filings just for the cause of delay," that Debtor failed to inform Mellon and the state court of her first petition (filed on January 26, 1999, at 3:38 p.m., before a hearing on the State Court Motion set for 8:30 a.m. on January 27, 1999), and General Order No. 1 advised Debtor that her failure to do so "may constitute cause for nullification of the automatic stay." The record supports these findings.[17]

■ Debtor argues that the bankruptcy court should not have considered her two subsequent bankruptcies but should have decided the issue based on facts as of date she filed her first bankruptcy petition. Debtor cites no authority for this proposition, and it is inconsistent with the very nature of retroactive relief from the automatic stay and the broad definition of "cause" to grant such relief. *See, e.g.,* *Schwartz,* 954 F.2d 569; *Kissinger,* 72 F.3d 107.

■ Debtor also argues that Mellon knew about her first bankruptcy petition shortly after it was filed, or approximately two years before moving for the Reopening Order and the Order Annulling Stay.

The bankruptcy court rejected this argument at the hearing on May 23, 2001, after noting the history of Debtor's three bankruptcy petitions:

> So there hasn't really been laches. There [has] just been an ongoing battle between the parties and now ... it seems appropriate to grant the motion to reopen and to grant that relief from stay taking into account all of the facts of this case.

Later, as part of its Stay Memorandum, the bankruptcy court stated,

> Both Mellon and the Debtor have unreasonably delayed addressing the stay violation issue. The violation occurred in January, 1999, during Debtor's first bankruptcy case. Over two years elapsed before Debtor raised the issue in the state court and Mellon raised the issue in the bankruptcy court. However, only Mellon has suffered from the other party's delay. Mellon's main detriment is the absence of mortgage payments from Debtor. Debtor, on the other hand, has had extended use and occupation of her home, with no mortgage payments.

17. The bankruptcy court elaborated on the underlying facts in its Stay Memorandum, issued August 16, 2001. Debtor included that decision in her supplemental excerpts of the record and offered to file a formal motion to supplement the record if requested. At oral argument before the panel, Mellon's counsel stated that Mellon had no objection to the panel's consideration of these supplemental excerpts. We grant the motion.

According to the bankruptcy court's decision, Debtor filed her first petition at 3:38 p.m. on January 26, 1999, just before the hearing on the State Court Motion set for 8:30 a.m. on January 27, 1999. Debtor filed her second petition on November 18, 1999, again without the requisite schedules, statements or chapter 13 plan, two days before an open house scheduled by the foreclosure commis-

sioner for November 20, 1999. *The United States Trustee moved to dismiss that case as having been filed in bad faith, Debtor filed her own motion to dismiss her case, Mellon moved for relief from the automatic stay, and the bankruptcy court ordered dismissal with a 180-day bar to refiling. Debtor filed her third petition on October 3, 2000, the day before a scheduled hearing in state court to confirm the foreclosure sale. After the United States Trustee moved to dismiss that case for failure to file schedules and statements, Debtor moved for and was granted an extension of time to file those documents and she did so on October 30, 2000. Mellon moved for relief from the automatic stay, which Debtor did not oppose and which was granted by order entered January 17, 2001. Debtor does not dispute these underlying facts.*

Neither party has contested these findings on appeal. From these facts it appears that not annulling the stay "harms the creditor" and annulling the stay "will not unjustly harm the debtor or other creditors." *In re Murray*, 193 B.R. 20, 22

Finally, as we have stated in footnote 9, annulling the stay after two years presumably would not have been necessary if Debtor had followed the mandate of the bankruptcy court's General Order No. 1 and immediately had informed the state court and Mellon that she had filed her voluntary petition in bankruptcy. Debtor failed to do so even though Mellon was the only creditor listed on her creditor matrix and even though she filed her first bankruptcy petition the day before the hearing on the State Court Motion. In these circumstances the bankruptcy court did not abuse its discretion in annulling the stay. *See Berg v. Good Samaritan Hosp. (In re Berg)*, 198 B.R. 557, 563 n. 12 (9th Cir. BAP 1996) (debtor's opportunity but failure to inform court of bankruptcy filing appeared to present "strong circumstance" for annulment), *aff'd*, 230 F.3d 1165 (9th Cir.2000).

### V. CONCLUSION

For two independent reasons the bankruptcy court had jurisdiction to issue the Order Annulling Stay, notwithstanding the dismissal of the Bankruptcy Case and regardless whether the case was reopened. First, the bankruptcy court had ancillary jurisdiction to interpret and enforce its General Order No. 1, which required Debt-

or to advise Mellon and the state court of her bankruptcy filing and provided that failure to do so "may constitute cause for nullification of the automatic stay." Second, Mellon's Motion to Annul the Stay under Section 362 commenced a "civil proceeding[ ] arising under title 11" (as opposed to civil proceedings "arising in or related to *cases* under title 11") within the meaning of 28 U.S.C. Section 1334(b). This "arising under" jurisdiction does not depend on the present existence of a non-dismissed, non-closed bankruptcy case. For either or both of these reasons, reopening was of no jurisdictional significance. Debtor lacks standing to appeal from the Reopening Order, and that appeal is DISMISSED.

In addition, the bankruptcy court did not abuse its discretion by issuing the Order Annulling Stay. While both Debtor and Mellon could have and should have raised the automatic stay issues two years sooner, Mellon was denied mortgage payments while Debtor gained free use of the Residence. This harm to Mellon and lack of unjust harm to Debtor, or any other creditor, is ample justification for annulling the automatic stay. The Order Annulling Stay is AFFIRMED.

RYAN, Bankruptcy Judge, concurring in part and dissenting in part.

I believe that the bankruptcy court had ancillary jurisdiction [18] to enter the order annulling the automatic stay (the "Order"), and I concur with that portion of the opinion. However, I do not believe that it is

---

**18.** The term "supplemental jurisdiction" refers to both ancillary and pendent jurisdiction. *See* 28 U.S.C. § 1367; Darrell Dunham, *Bankruptcy Court Jurisdiction*, 67 UMKC L. REV. 229, 271–75 (1999). Here, I refer to "ancillary jurisdiction" to mean jurisdiction over a postdismissal matter that involves interpreting orders previously issued by the bankruptcy court, *see Beneficial Trust Deeds v.*

*Franklin (In re Franklin)*, 802 F.2d 324, 326–27 (9th Cir.1986); jurisdiction over a postdismissal matter that was established prior to dismissal of the case, *see Davis v. C.G. Courington (In re Davis)*, 177 B.R. 907, 912 (9th Cir. BAP 1995); or jurisdiction to dispose of "ancillary matters," such as attorney's fee disputes, *see Elias v. U.S. Trustee (In re Elias)*, 188 F.3d 1160, 1162 (9th Cir.1999).

necessary to address whether the bankruptcy court had "arising under" jurisdiction, and as to that portion of the opinion, I respectfully dissent.

A bankruptcy court's jurisdiction is governed by 28 U.S.C. § 1334, which provides in part that "the district courts [and bankruptcy courts] shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The majority takes the position that even absent ancillary jurisdiction, a bankruptcy court has "arising under" jurisdiction after a bankruptcy case has been dismissed. Apparently, according to the majority, as long as the matter involves a provision of title 11, jurisdiction can be asserted postdismissal. I disagree.

The majority reasons that the legislative history of the Code supports its conclusion. It further asserts that our prior decisions support their position. Finally, the majority contends that prior Ninth Circuit authority does not preclude the result that it reaches today. For the reasons stated below, I disagree with all these assertions.

I begin by noting that a bankruptcy court is a court of limited jurisdiction. *See Taxel v. Elec. Sports Research (In re Cinematronics, Inc.),* 916 F.2d 1444, 1449–50 (9th Cir.1990). The Ninth Circuit narrowly construes a bankruptcy court's postdismissal jurisdiction. *See Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 481 (9th Cir.1989). Therefore, we should carefully consider our jurisdiction and not seek to expand it. *See Linkway Inv. Co., Inc. v. Olsen (In re Casamont Invs., Ltd.),* 196 B.R. 517, 521 (9th Cir. BAP 1996).

First, the majority errs because a motion for relief from the automatic stay falls into the "arising in" category of bankruptcy jurisdiction, and not the "arising under" category as asserted by the majority. In *Eastport Assocs. v. City of L.A. (In re*

*Eastport Assocs.),* 935 F.2d 1071 (9th Cir. 1991), the Ninth Circuit established the definition for "arising in" jurisdiction. *Id.* at 1076. There, the court quoted the Fifth Circuit and stated that

[t]he meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*Id.* (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 96–97 (5th Cir.1987) (emphasis in original)). In *Wood,* the court's definition of "arising in" jurisdiction was taken from *Collier. See Wood,* 825 F.2d at 96–97 (citing 1 *Collier on Bankruptcy* ¶ 3.01 at 3–23 (1987)).

*Collier* defines

"[a]rising in" acts as the residual category of civil proceedings, and [it] includes such things as administrative matters, "orders to turn over property of the estate," and "determinations of the validity, extent, or priority of liens." "Arising in" proceedings might also include contempt matters, motions to change the composition of a creditors' committee under section 1102, and motions to appoint or elect trustees and examiners under section 1104. An action to recover a postpetition account "arises in the bankruptcy case."

It seems apparent, therefore, that the phrase "administrative matters," discussed below, is the principal constituent of "arising in" jurisdiction.

1 *Collier on Bankruptcy* ¶ 3.01[4][c][iv] (Lawrence P. King et al. eds. 15th ed. rev.2001) (footnotes omitted). *Collier* then cross-references ¶ 3.02[3][a], which is entitled "Matters of Administration."

The first category, matters of administration, includes (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 ...; (D) orders in respect to obtaining credit; (G) *motions to terminate, annul, or modify the automatic stay;* (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; and (L) confirmations of plans.

*Collier* ¶ 3.02[3][a] (emphasis added and footnotes omitted).

By this cross-reference, *Collier* indicates that the core proceedings discussed in ¶ 3.02[3][a] come under the "arising in" jurisdiction of a bankruptcy court. A motion to annul the automatic stay is one of those proceedings.

Thus, to the extent that the majority predicates jurisdiction on an "arising under" basis, the majority errs. The bankruptcy court did not have "arising under" jurisdiction to annul the automatic stay.

Secondly, even assuming that "arising under" jurisdiction exists, it does not serve as an independent jurisdictional basis in a dismissed case. The authority cited by the majority for this proposition is inapposite. For example, the majority cites portions of legislative history in support of its argument:

> ... anything that occurs within a case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.

> The use of the term "proceeding," though, is not intended to confine the bankruptcy case. Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, [under Section] 524(b), the existence of prohibited post-bankruptcy discrimination, [under Section] 525, the validity of securities issued under a reorganization plan, and so on. The bankruptcy courts will be able to hear these proceedings because they *arise under title 11.*

*Opinion,* part IV.2.b. (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6401). The legislative history speaks in terms of *closed cases,* not dismissed cases. Congressional intent clearly supports the majority's assertion that a bankruptcy court has postclosing jurisdiction over certain matters. However, nothing in the language of the legislative history supports extending post closing jurisdiction to postdismissal jurisdiction. Additionally, the majority cites *Menk v. LaPaglia (In re Menk),* 241 B.R. 896 (9th Cir. BAP 1999), and *Davis v. C.G. Courington (In re Davis),* 177 B.R. 907 (9th Cir. BAP 1995), as standing for the proposition that " 'arising under' jurisdiction does not depend on the present existence of an open case or a non-dismissed case." *Opinion,* part IV.2.b. These cases do not support a claim for postdismissal jurisdiction, as is the case here.

In *Menk,* the bankruptcy court *reopened* a chapter 7 debtor's case to allow a creditor that had not been properly scheduled to file a dischargeability complaint. After a judgment was entered, the debtor appealed the order reopening his case, but he did not appeal the determination that the debt was nondischargeable. *See Menk,* 241 B.R. at 903–04. We held that the debtor lacked standing to appeal the order reopening his case because the bankruptcy

court had jurisdiction to determine the dischargeability of the underlying debt regardless of whether the debtor's bankruptcy case was open. *Id.* at 917.

In *Davis*, the debtor filed a complaint alleging that a creditor had wilfully violated the automatic stay. After the debtor's bankruptcy case was dismissed, the creditor filed a motion to dismiss the adversary proceeding, which the bankruptcy court granted. *See Davis*, 177 B.R. at 910.

On appeal we reversed, holding that the dismissal of the underlying bankruptcy case did not moot a complaint for a willful violation of the automatic stay. *Id.* at 911. We reasoned that the bankruptcy court had ancillary jurisdiction postdismissal because subject-matter jurisdiction had been established prior to dismissal of the case.[19] *Id.* at 912. We further stated that "dismissal of the underlying case renders moot a motion for prospective relief regarding the stay, but does not render moot an action for damages based on violation of the stay." *Id.* at 912–13.

Neither *Menk* nor *Davis* is on point. As stated above, *Menk* was a closed case, not a dismissed case. In *Davis*, jurisdiction was established as to the complaint for a willful violation of the automatic stay prior to dismissal. Here, we have a dismissed case, and the motion to annul the automatic stay was not filed prior to dismissal of the case. Thus, the holdings of *Menk* and *Davis* are clearly distinguishable from the situation here.[20]

More importantly, the result reached by the majority is contrary to *Tsafaroff v.*

*Taylor (In re Taylor)*, 884 F.2d 478 (9th Cir.1989), and *Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)*, 699 F.2d 963 (9th Cir.1983). In *Taylor*, two creditors sought prospective relief from the automatic stay. To obtain this relief, they filed an adversary proceeding. This adversary proceeding and the underlying bankruptcy case were dismissed by one bankruptcy judge. Later, a second bankruptcy judge entered a default judgment that granted the prospective relief sought. The Ninth Circuit held that the default judgment was void because the second bankruptcy court lacked postdismissal jurisdiction to enter that order. *See Taylor*, 884 F.2d at 481–82.

There, the Ninth Circuit stated that the bankruptcy court retained subject-matter jurisdiction to interpret orders entered prior to dismissal of the case and to dispose of ancillary matters. However, the bankruptcy court did not have jurisdiction to grant new relief independent of its prior rulings once the bankruptcy case and the adversary action had been dismissed. Therefore, even though the bankruptcy court had jurisdiction to lift the automatic stay prior to the dismissal of the case, it exceeded its jurisdiction postdismissal by signing the stay lift order that granted prospective relief. *Id.*

In *Income Prop. Builders*, after a creditor appealed an order denying a motion to reimpose the automatic stay, the bankruptcy court dismissed the debtor's case. The Ninth Circuit then dismissed the appeal because the underlying case had been dis-

---

19. Subject-matter jurisdiction is determined at the time the action is initiated. *See Linkway Inv. Co., Inc. v. Olsen (In re Casamont Investors, Ltd.)*, 196 B.R. 517, 525 (9th Cir. BAP 1996).

20. I note that the majority has not cited a case in which a bankruptcy court has asserted

"arising under" jurisdiction over a postdismissal case. Indeed, my own research has revealed no such case. However, as noted below, there are numerous Ninth Circuit cases holding that a bankruptcy court may exercise ancillary jurisdiction postdismissal.

missed. The Ninth Circuit stated that "[o]nce the bankruptcy was dismissed, a bankruptcy court no longer had power to order the stay or to award damages allegedly attributable to its vacation [of the stay]." *Income Prop. Builders*, 699 F.2d at 964.

Thus, a bankruptcy court is precluded from granting "new relief" postdismissal that is independent of a prior order. *See Franklin*, 802 F.2d at 327. Nonetheless, the majority's approach would allow a bankruptcy court to provide new relief independent of a prior order as long as the relief was covered by the "arising under" umbrella. Indeed, the majority's approach would render *Taylor* and *Income Prop. Builders* meaningless. According to the majority, a right to relief or a cause of action created by the Code provides "arising under" jurisdiction. Therefore, if the bankruptcy court had "arising under" jurisdiction, then it had jurisdiction to provide postdismissal "new relief." This certainly is contrary to both *Taylor* and *Income Prop. Builders*.

The Ninth Circuit has provided a clear roadmap for deciding cases such as this one. The Ninth Circuit consistently looks to ancillary jurisdiction for the answer. *See, e.g. Taylor*, 884 F.2d at 481 (ancillary jurisdiction to interpret orders, but not enter an order granting new relief); *Elias*, 188 F.3d at 1163–66 (ancillary jurisdiction over attorney's fee dispute); *Franklin*, 802 F.2d at 326–27 (ancillary jurisdiction to interpret an order); *Spacek v. Tabatabay (In re Universal Farming Indus.)*, 873 F.2d 1332, 1333 (9th Cir.1989) (ancillary jurisdiction may be exercised postdismissal). We should do likewise.

Here, ancillary jurisdiction appropriately applies and permits the bankruptcy court to take jurisdiction in granting the relief requested. Unwilling to rest on this basis, the majority inappropriately expands a bankruptcy court's postdismissal jurisdiction to anything that arguably falls within the "arising under" umbrella. This is just the type of jurisdictional expansion that the Ninth Circuit has admonished bankruptcy courts not to undertake.

In summary, I believe that the postdismissal jurisdiction of the bankruptcy court to adjudicate an action initiated postdismissal must rest on ancillary jurisdiction, which relates back to the jurisdiction that the court had predismissal. In other words, a bankruptcy court has no separate postdismissal jurisdiction under 28 U.S.C. § 1334 to deal with an action that does not satisfy the ancillary jurisdictional requirements.

BRANDT, Bankruptcy Judge, concurring.

I would affirm on the basis of "arising under" jurisdiction (part 2.b. of the discussion), and, alternatively, as ancillary to the dismissal order, as set forth in footnote 8. I do not think it necessary to reach the question of ancillarity to General Order No. 1, and the considerations outlined in the penultimate paragraph of part 2.a. suggest we should not.

I agree that reopening is legally innocuous in this setting and that debtor therefore lacks standing to appeal that order, and further, that the annulment order was not an abuse of discretion.