**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:
PACIFIC RIM PROPERTY SERVICE
CORPORATION,
                    Debtor.

WILLIAM H. GILLIAM,
                    Appellant,
v.
ASSOCIATION OF APARTMENT
OWNERS OF KUHIO SHORES AT POIPU,
                    Appellee.

BAP No. HI-20-1071-BTL

Bk. No. 19-01051-RF

**MEMORANDUM**[*]

Appeal from the United States Bankruptcy Court
for the District of Hawaii
Robert J. Faris, Chief Bankruptcy Judge, Presiding

Before:  BRAND, TAYLOR, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant William H. Gilliam appeals an order granting the Association

of Apartment Owners of Kuhio Shores at Poipu ("AOAO") retroactive

---

[*] This disposition is not appropriate for publication.  Although it may be cited
for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no
precedential value, *see* 9th Cir. BAP Rule 8024-1.

annulment of the automatic stay under § 362(d)(1).[1] Because Gilliam lacked standing to oppose the AOAO's motion, and further lacks standing to appeal the order granting the stay annulment, we DISMISS for lack of jurisdiction.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

Vivian T. Lord, Gilliam's late mother, incorporated the debtor as North Pacific Rim Property Service Corporation in 1995. In 2002, Lord changed the corporate name to Pacific Rim Property Service Corporation ("Pacific Rim"). Until her death in 2009, Lord was the sole shareholder of Pacific Rim and held all offices in that entity.

Pacific Rim acquired the subject property known as the Condominium in the mid-1990's. Lord resided there until her death in 2009. At all times relevant, title to the Condominium has been held by Pacific Rim.

Pacific Rim was administratively dissolved by the State of Hawaii on December 4, 2012, for failure to file annual reports or remit the required fees. At that time, given that Lord was deceased, there were no shareholders or officers of Pacific Rim.

On December 2, 2013, an identically named Pacific Rim Property Service Corporation filed its Articles of Incorporation, with Gilliam executing the document ("New Corporation"). Gilliam's mailing address was in Oregon.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Despite incorporating under the same name, Pacific Rim was never legally reinstated under Hawaii Revised Statutes § 414-403. Further, title to the Condominium was never transferred to the New Corporation.

The AOAO filed suit against Pacific Rim in the Hawaii state court to foreclose its lien on the Condominium for unpaid assessments totaling approximately $184,000. In addition, tax liens on the Condominium totaled approximately $58,000. With no existing shareholders or officers responsible for handling the affairs of Pacific Rim, the state court appointed George R. Robinson as the receiver ("Receiver") to wind up and settle its affairs. One of his tasks was to determine ownership of the Condominium. Gilliam contended that either he or the New Corporation was its legal owner. As provided in the order appointing the Receiver, if Gilliam could provide a legal conveyance document conclusively establishing his or the New Corporation's legal ownership of the Condominium, the state court would consider discharging the Receiver from his duties.

The Receiver later prepared a report to the state court recommending a court-ordered sale of the Condominium to settle Pacific Rim's debts. The Receiver noted that Gilliam was unable to show any evidence of ownership of the Condominium despite claiming both that he lived there and that he was using it as a vacation rental property.

The AOAO then filed a Motion for Instructions for the Receiver, which, if granted, would enable him to sell the Condominium. A hearing was set for

August 20, 2019. Meanwhile, the state court entered an order in June 2019, denying Gilliam's motion to intervene in the state court action.

## B.  Postpetition events

On August 19, 2019, the day before the scheduled hearing for the Motion for Instructions, Gilliam, as the purported statutory trustee, filed a skeletal chapter 11 bankruptcy case for Pacific Rim. The bankruptcy court dismissed the case on September 5, 2019, for failure to pay filing fees and to file the required documents.

After the case dismissal, the AOAO moved to annul the automatic stay under § 362(d), requesting that relief be granted retroactively to the petition date ("Motion to Annul Stay"). The hearing for the Motion for Instructions had taken place on August 20 as scheduled, but the order granting relief to sell the Condominium was not entered until after Pacific Rim's chapter 11 case had been dismissed. The AOAO argued that annulment of the stay was warranted because Gilliam had no authority to file a bankruptcy case on behalf of Pacific Rim, which the AOAO contended he did solely to frustrate the court-ordered sale. The AOAO argued that Gilliam was not the statutory trustee for Pacific Rim as he claimed, that he had no ownership interest in the entity, and that he had no ownership interest in the Condominium. Further, argued the AOAO, if a bankruptcy was to be filed for Pacific Rim only the Receiver could do so, and he did not consent to the filing.

In response to the Motion to Annul Stay, Gilliam filed a one-page

4

handwritten document stating that he opposed annulling the stay and requesting a 30-day extension. Gilliam stated that his computer and files had been stolen in a burglary and therefore he needed more time to file a proper opposition.

The bankruptcy court orally granted the Motion to Annul Stay at a hearing. Gilliam did not appear. Before the court entered a written order, Gilliam filed a motion to reconsider. He argued that the court should reconsider its ruling to annul the stay given his excusable neglect to file a proper opposition, and because he is entitled to deference under Hawaii law as the statutory trustee of Pacific Rim.

The bankruptcy court then entered a written order granting the Motion to Annul Stay. It further denied Gilliam's motion to reconsider. The court noted that Gilliam's asserted standing to oppose the Motion to Annul Stay as trustee or receiver for Pacific Rim had no basis in fact or law. The court further noted that it would not allow Gilliam to take the contradictory position in his own chapter 13 case that he, not Pacific Rim, was the owner of the Condominium.[2] This timely appeal followed.

---

[2] Gilliam has now filed a chapter 13 case and claimed an ownership interest in the Condominium. On March 13, 2020, the bankruptcy court entered an order in Gilliam's case determining that the Receiver had sole control over Pacific Rim's assets including the Condominium, that the Condominium was not property of Gilliam's estate despite his post-receivership transfer of title to himself, and that the Receiver was not required to turn over the Condominium to Gilliam.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G). *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 242-43 & n.8 (9th Cir. BAP 2002) (the bankruptcy court retains jurisdiction to review motions to annul the automatic stay even after a case is dismissed or closed). We discuss our jurisdiction under 28 U.S.C. § 158 below.

## III. ISSUE

Does Gilliam have standing to challenge the order annulling the stay?

## IV. STANDARD OF REVIEW

We consider appellate standing de novo. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 879 (9th Cir. 2012).

## V. DISCUSSION

The AOAO argues that Gilliam lacks standing to appeal the order annulling the automatic stay. Gilliam appears to argue that he has standing as the sole shareholder of the dissolved Pacific Rim. Contrary to his assertion, Gilliam is not a shareholder, much less the sole shareholder, of Pacific Rim.

To determine if Gilliam has standing we must consider both constitutional and prudential standing doctrines. Gilliam bears the burden of establishing both constitutional standing and prudential standing. *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 907 n.11 (9th Cir. BAP 2011). At its core, the standing inquiry, in all its forms, "is an inherently factual inquiry into the nature of the rights asserted[.]" *Id.*

6

Constitutional standing is derived from the case and controversy requirement of Article III of the Constitution and requires a plaintiff to demonstrate "injury in fact, causation, and redressability." *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014)). To satisfy constitutional standing, Gilliam must demonstrate "'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish causation, Gilliam must show that his injury is "fairly traceable" to the challenged action – here, the order annulling the automatic stay in Pacific Rim's bankruptcy case. *See Lujan*, 504 U.S. at 560. Finally, to prove redressability, Gilliam must persuade us that a favorable decision by this Panel likely would redress his injury. *Id.* at 560-61.

Gilliam has not established that he has constitutional standing. He has not identified any particularized or concrete injury arising from the bankruptcy court's order annulling the stay of Pacific Rim. Gilliam is not the debtor, nor does he have any interest in or control over the debtor or its assets, including the Condominium. While he attacks the state court's decision to appoint the Receiver and maintains that he is or should be the statutory trustee for the entity, we have no jurisdiction over the state court's order appointing the Receiver. For the same reason, Gilliam cannot show

7

redressability. Reversing this particular order would not redress any injury that Gilliam claims he has suffered as a result of the state court proceedings.

Gilliam has also not established that he has prudential standing. Prudential standing is a set of "judicially self-imposed limits on the exercise of federal jurisdiction." *In re Veal*, 450 B.R. at 906 (internal quotation marks and citations omitted). A facet of prudential standing particular to bankruptcy appeals is the "person aggrieved" standard. Under this standard, only "those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court" have standing to appeal. *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). The appellant must demonstrate that the order on appeal diminished its property, increased its burdens, or otherwise detrimentally affected its rights. *Id.* An appellant cannot rest its claim for relief on the legal rights or interests of another. *Umpqua Shopping Ctr., Inc. v. Tippet (In re Umpqua Shopping Ctr., Inc.)*, 111 B.R. 303, 305 (9th Cir. BAP 1990) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Gilliam has not shown how he is "directly and adversely affected pecuniarily" by the bankruptcy court's decision to annul the stay in Pacific Rim's bankruptcy case. As discussed above, Gilliam is not the debtor, nor does he have any interest in or control over the debtor or its assets. Simply put, the order annulling the stay has not diminished Gilliam's property, increased his burdens, or otherwise detrimentally affected his rights. Hypothetically, even if we were to reverse the order and potentially subject

the AOAO to a stay violation, any claim against the AOAO for damages would be the Receiver's legal right and interest to pursue on behalf of Pacific Rim, not Gilliam's.

Accordingly, because Gilliam lacks standing, this appeal must be dismissed.

## VI. CONCLUSION

For the reasons stated above, we DISMISS this appeal for lack of standing.